Kathy WACKER and Bryan
Wacker, Appellants,

v.

ST. FRANCIS MEDICAL CENTER,
Defendant,

Matthew Collard, D.O., Orthopedic
Specialists, P.C., Respondents,

Charles Pewitt, D.O., Bernard Burns,
D.O., Orthopedic Associates of Southeast Missouri, P.C., Aaron Koonce,
D.O. Southeast Missouri Hospital and
Southeast Missouri Hospital Physicians, LLC, Defendants.

No. ED 99789.

Missouri Court of Appeals,
Eastern District,
Division Two.

Oct. 29, 2013.

Matthew J. Padberg, St. Louis, MO, for appellant.

Mark A. Gonnermann, Clayton, MO, for respondent.

ROBERT G. DOWD, JR., Judge.

Kathy and Bryan Wacker (collectively, "Appellants") appeal from the judgment of the trial court granting summary judgment in favor of Dr. Matthew Collard and Orthopedic Specialists, P.C. (collectively, "Respondents") in a medical malpractice action. Appellants argue the trial court erred in granting summary judgment be-

cause they established a prima facie case of medical malpractice. We reverse.

Kathy Wacker developed lymphedema following a hysterectomy with lymph node dissection in 1994. The lymphedema required physical therapy and medical monitoring for approximately ten years prior to 2008. In March 2008, Ms. Wacker began experiencing pain in her left leg and foot. She consulted with her primary care physician, co-defendant Dr. Charles Pewitt, her neurologist, co-defendant Dr. Aaron Koonce, and additional non-party physicians.

On June 4, 2008, Ms. Wacker saw Dr. Collard, an orthopedic surgeon. Ms. Wacker was referred to Dr. Collard by a friend. Dr. Collard obtained a medical history from Ms. Wacker; she reported left foot numbness, tingling, and redness. Dr. Collard performed a physical evaluation and a neurological examination of Ms. Wacker and diagnosed her with bilateral lower extremity lymphedema and left lower extremity neuropathy. He recommended a nerve conduction study and instructed Ms. Wacker to follow up with him once the study was completed.

Ms. Wacker underwent a nerve conduction study later that day and was diagnosed with polyneuropathy by Dr. Nasseem Shekhani. Dr. Shekhani instructed Ms. Wacker to follow-up with Dr. Collard. Because the diagnosis was not orthopedic in nature, Dr. Collard recommended that Ms. Wacker follow up with her neurologist.

On July 22, 2008, Ms. Wacker underwent a second nerve conduction study that also led to a polyneuropathy diagnosis. She continued to see numerous physicians regarding her condition.

On April 27, 2009, Ms. Wacker went to St. Francis Medical Center with complaints of left leg pain. She was diagnosed with phlegmasia cerulean dolens, a severe form of deep vein thrombosis. On May 3, 2009, she underwent an above-the-knee amputation of her left leg.

On October 25, 2011, Appellants filed a Petition alleging that the defendants failed to diagnose and treat Ms. Wacker's disease. With respect to Dr. Collard, Appellants alleged he failed to follow-up on or report the findings of the EMG/NCT he ordered, failed to be aggressive in his care and treatment in a patient that was at increased risk for vascular disease, and failed to refer Ms. Wacker to a vascular surgeon.

Appellants endorsed five expert witnesses, though only two of those experts, Dr. Samuel Ahn and Dr. Mark Ivey, offered an opinion on Dr. Collard's care. On January 18, 2013, Respondents moved for summary judgment, alleging Appellants had failed to offer expert testimony showing Dr. Collard deviated from the standard of care. In response, Appellants submitted an affidavit from Dr. Ivey stating Dr. Collard had failed to use the degree of skill and learning ordinarily used by members of Dr. Collard's profession. Respondents moved to strike Dr. Ivey's affidavit as untimely. The trial court heard oral arguments on the motion for summary judgment, granted the motion, and determined Respondents' motion to strike Dr. Ivey's affidavit was moot. This appeal follows.

■ Appellants argue the trial court erred in granting summary judgment because they established a prima facie case of medical malpractice. We agree.

We review the entry of summary judgment *de novo*. *C–H Bldg. Associates, LLC v. Duffey*, 309 S.W.3d 897, 899 (Mo.App. W.D.2010). To be entitled to summary judgment, a defendant must show either: (1) facts negating one or more elements of the plaintiff's claim, (2) that the plaintiff cannot and will not be able to prove one or

more elements of their claim, or (3) that there is no material dispute about each fact necessary to establish an affirmative defense. *Highfill v. Hale,* 186 S.W.3d 277, 280 (Mo. banc 2006). We review the record in the light most favorable to the appellant and all reasonable inferences are to be construed in favor of the appellant. *Bear Foot, Inc. v. Chandler,* 965 S.W.2d 386, 388 (Mo.App. E.D.1998).

■ To establish a prima facie case for medical malpractice, a plaintiff must offer evidence showing (1) an act or omission of the defendant failed to meet the requisite standard of care, (2) the act or omission was performed negligently, and (3) the act or omission caused the appellant's injury. *Mueller v. Bauer,* 54 S.W.3d 652, 656 (Mo.App. E.D.2001). For a submissible case, the plaintiff's standard of care expert must offer an opinion regarding the objective standard of care that is generally accepted in the profession. *Hickman v. Branson Ear, Nose & Throat, Inc.,* 256 S.W.3d 120, 124 (Mo. banc 2008).

■ The deposition testimony of Dr. Ivey established Appellants' prima facie case for medical malpractice. Dr. Ivey is a family medicine expert and testified at deposition that he was not qualified to offer any standard of care opinions "in terms of orthopedic care."[1] However, Dr. Collard's alleged error was not orthopedic in nature. Instead, Dr. Ivey offered a standard of care opinion for "someone with [Dr. Collard's] recent training" from residency. Dr. Ivey testified that a doctor who is fluent in EMGs, finds bluing and mottling of the foot, and sees decreased motor function and pain should have referred the patient to a vascular specialist.[2] Dr. Ivey's opinion is that Dr. Collard deviated from the standard of care for any doctor who has finished residency. Dr. Ivey's testimony is sufficient to establish that Dr. Collard's failure to refer Ms. Wacker to a vascular specialist (1) violated the standard of care, (2) was negligent, and (3) caused Ms. Wacker to lose her leg.

Furthermore, Appellants submitted an affidavit from Dr. Ivey restating his opinion more clearly. In his affidavit, Dr. Ivey states that Dr. Collard "failed to use that degree of skill and learning ordinarily used under the same or similar circumstances by members of Dr. Collard's profession." Contrary to Respondents' assertion, the affidavit merely restates the same opinion Dr. Ivey gave at deposition. In both the deposition testimony and in the affidavit, Dr. Ivey offers the opinion that Dr. Collard violated the standard of care that applies to all doctors who have completed residency.

Therefore, the trial court erred in granting Respondents' motion for summary judgment. Point granted.

The judgment of the trial court is reversed and the cause is remanded.

LAWRENCE E. MOONEY, P.J. and SHERRI B. SULLIVAN, J., concur.

---

1. Also, an expert opinion on orthopedic care was not necessary because no such care was offered.

2. Respondents claim Dr. Ivey's opinion was that Dr. Collard should have referred Ms. Wacker to a vascular surgeon or a specialist of any kind. However, this interpretation is directly refuted by Dr. Ivey's deposition testimony: "It's my belief that he did did (sic) not have him send her to a vascular specialist."