Gary M. Gaertner, Jr., Presiding Judge
Introduction
Allied Physicians Group, L.L.C., d/b/a Breakthrough Pain Relief ("Breakthrough") and Catherine Doty, M.D. ("Dr. Doty") (together, "Appellants") appeal from the trial court's entry of judgment upon a jury verdict in favor of Claudia Ball ("Ball") in her petition for damages. Appellants challenge the trial court's decision to submit the issues of future medical damages and informed consent to the jury, challenge the trial court's exclusion of certain evidence, and assert the trial court gave improper jury instructions. The judgment is affirmed in part and is reversed and remanded in part, in accordance with this opinion.
Facts and Background
On December 10, 2009, Dr. Doty performed an outpatient procedure on Ball at the Breakthrough clinic. Dr. Doty was administering trigger point injections along the edge of Ball's tailbone and upper gluteal muscles along the iliac crest (pelvic wings) as treatment for Ball's severe low back pain, when the hypodermic needle broke off of its hub on the syringe and became lodged in Ball's body. Dr. Doty made two attempts to recover the needle through fluoroscopic guided incisions but was unable to withdraw the needle. Ball then proceeded to St. Luke's hospital where they were likewise unable to withdraw the needle.
Ball filed a petition for damages against Appellants asserting negligence and failure to exercise such care as a reasonably prudent health care provider would have used under similar circumstances, causing Ball's injuries and damages. At trial, Dr. Barry Feinberg ("Dr. Feinberg") was Ball's expert witness, and he testified, as relevant to the issues on appeal, that in his professional opinion Dr. Doty's treatment fell below the standard of care in two respects, in that the 27-gauge, one and a half inch needle Dr. Doty used for the injection was both too thin and too short for the location (deep gluteal muscles) of the injection, especially in light of Ball's truncal obesity.
Dr. Doty challenged the allegation of negligence, testifying as follows. She commonly used a 27-gauge, one and a half inch needle to perform trigger point injections, as she was taught to do, and had been doing so since 1995. Prior to December 10, 2009, she had performed thousands of trigger point injections with 27-gauge, one-and-a-half-inch needles, and she had never before had a needle separate from the hub.
*379 It was her belief that her treatment of Ball was appropriate and not negligent, and that the only reason the needle separated from the hub was because the needle was defective. Likewise, Appellants presented expert testimony from Dr. John Metzler ("Dr. Metzler") that Dr. Doty was not negligent in her care of Ball, but rather a 27-gauge, one-and-a-half-inch needle was appropriate for the trigger point injection Dr. Doty was performing on Ball. He could think of no reason for the needle separating from the hub other than a failure of the needle.
For their defense, Appellants sought to introduce evidence of a second occasion when a needle broke off the hub of the syringe. Ball filed a motion in limine to exclude this evidence, which the trial court granted. Appellants made an offer of proof, adducing testimony from both Dr. Doty and Kimberly Dohack ("Dohack"), Dr. Doty's medical assistant at Breakthrough assisting her that day, that approximately one week after the incident with Ball, Dr. Doty was performing a trigger point injection in the shoulder of another patient using a 27-gauge, one-and-a-half-inch needle from the same box, provided by the same manufacturer, Exel ("Exel"), when the needle broke off the hub into the patient's shoulder. Dr. Doty was able to retrieve the needle with forceps.
After the December 10 incident with Ball, Dr. Doty and Dohack sent the syringe and hub to St. Luke's hospital, where St. Luke's personnel destroyed the syringe; and after the second incident of the needle breaking off the hub, Dohack disposed of the syringe. Dr. Doty and Dohack both testified they called the U.S. representative for Exel listed on the box after each breakage to report the incidents, but they agreed they did not make a contemporaneous record of their complaints reporting these incidents. Upon advice from their supplier, they disposed of all the remaining needles in that box and switched manufacturers. Ball responded with an affidavit from an Exelint[1] Medical Products representative that neither Dr. Doty nor anyone from Breakthrough ever made a complaint about broken needles.
As well, at trial Ball asserted Appellants were negligent for Dr. Doty's failure to obtain Ball's informed consent before attempting to retrieve the needle at Breakthrough. Ball testified that after the needle became lodged in her back, Dr. Doty neither informed Ball of what she planned to do to retrieve the needle, nor gave Ball the option of going to the hospital instead for retrieval.
By contrast, Dr. Doty testified that before performing the incisions to remove the needle, she verbally told Ball exactly what she was going to do to attempt to retrieve the needle and asked Ball if that was what she wanted to do or if she wanted to go to the ER. Ball made the decision to proceed with the retrieval attempts at Breakthrough rather than go to the hospital, and Ball verbally consented to up to two incisions. Dr. Doty agreed, however, that Ball did not sign a written informed consent form for the attempted retrieval and that her medical notes from that day did not reflect that she had offered Ball the option to go to St. Luke's hospital instead of attempting to remove the needle at Breakthrough. Dr. Doty also defined informed consent for the jury.
Likewise, Dohack testified that after the needle broke off the hub, Dohack heard *380 Dr. Doty both tell Ball what had happened and give Ball the choice of trying to retrieve the needle immediately with a small incision under a fluoroscope, or of going to the hospital for retrieval. Dohack testified that Ball stated she did not want to go to the hospital but wanted Dr. Doty to attempt to retrieve the needle at Breakthrough, at which point Dr. Doty explained the procedure she would use to retrieve the needle.
Ball presented the following evidence to prove her damages. Dr. Feinberg testified that he treated Ball in 2011 for pain in her lower back that both predated and continued after the December 2009 incident when the needle broke off in her back. He took new X-rays and a CAT scan, which revealed that in 2011 the needle had migrated approximately six inches from where it initially entered her body and was lodged close to Ball's spine. The needle was encapsulated in and immobilized by scar tissue. Dr. Feinberg believed it was best not to attempt to remove the needle but leave it in place, because the needle was unlikely to continue migrating due to the surrounding immobilizing scar tissue. He stated, however, that he would recommend surgery to remove the needle if it migrated further, which could occur in the event of a trauma such as a car accident or a bad fall, or if the scar tissue surrounding the needle grew larger and impinged on her spinal nerve roots. The scar tissue could grow in the event of ongoing inflammatory problems, but would otherwise be static. As well, in the future Ball will be unable to have an MRI, which is a diagnostic tool, because the magnetic process could dislodge the needle, and she will be unable to have a deep tissue massage in the area where the needle is lodged. On cross-examination, Dr. Feinberg agreed that Ball reported no pain where the needle is currently located in her back, and that further migration of the needle was unlikely absent a trauma, which may never occur.
Ball testified that the pain she experienced after the surgeries to retrieve the needle was different than the pain she experienced before. The new pain affects her in that she is afraid of falling down or getting into a car accident and dislodging the needle, she cannot get massages, and she is afraid of getting further trigger point injections to treat her pain. Sometimes she gets rashes around the area where the surgeon at St. Luke's hospital made his incisions to retrieve the needle.
Appellants adduced testimony from their expert witness, Dr. Metzler, that his review of Ball's medical records showed that while Ball's back pain continued as before December 2009, she reported no new pain in the location where the needle is currently located. Dr. Metzler further testified that Ball's records show that the needle had not moved since 2010, and he believed the needle was unlikely to migrate further or require additional surgery.
During the jury-instruction conference, counsel for Appellants objected to instructions proposing to submit the issues of informed consent and future medical damages to the jury. The trial court overruled the objections and allowed the instructions. Counsel for Ball requested to submit a specific amount of damages to the jury for future medical damages, based on the past medical damages, The trial court disallowed this, stating "I don't think there's any evidence to support a certain number, there just isn't because everyone agreed that it could happen, but it wasn't likely to happen.... [I]t would be speculative what if she has an auto accident, what if she does this or that.... I don't think it's fair for [Ball] to get up and suggest a number ... based on something that may never happen."
*381 During closing arguments, Ball requested that the jury return a verdict awarding her at least $1,019,617.12: $19,617.12 in past economic damages including medical damages, $500,000 in past non-economic damages for pain and suffering, and $500,000 in future non-economic damages for future pain and suffering, including restrictions to her life, such as being unable to have massages or MRIs. In addition, Ball requested the jury award her an unspecified amount for future medical damages if they believed she may in the future need medical treatment in the event the needle continued to migrate or the scar tissue encapsulating the needle grew.
The jury found in favor of Ball, and it awarded her a total of $507,000 as follows:
$7,000 in past economic damages, including medical damages,
$135,000 in past non-economic damages,
$185,000 in future medical damages, and
$180,000 in future non-economic damages.
The trial court entered judgment in accordance with the jury's verdict. Appellants filed a motion for judgment notwithstanding the verdict or for a new trial. The trial court denied the motion. This appeal follows.
Discussion
Appellants raise four points on appeal. First, they argue the trial court erred in overruling their motion for new trial, because the evidence did not support the submission of future medical damages to the jury. Second, they argue the trial court erroneously excluded evidence of a defect in the needle. Third, they assert instructional error in submitting the issue of informed consent to the jury without sufficient evidence. And fourth, they assert the trial court plainly erred in submitting Instruction Number 7 because it was missing a conjunctive "and," resulting in prejudicial error. We address the points in the order raised.
Point I
In their first point on appeal, Appellants argue the trial court erred in overruling their motion for new trial because the trial court erroneously submitted the issue of future medical damages to the jury, in that those damages were speculative and not supported by substantial evidence. We agree.
Following the jury verdict in favor of Ball, Appellants moved for a new trial, claiming, as relevant to Point I on appeal, the submission of future economic damages was not supported by substantial evidence. We review the trial court's denial of a motion for new trial for an abuse of discretion, finding abuse when the ruling is clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. Westerman v. Shogren, 392 S.W.3d 465, 470-71 (Mo. App. W.D. 2012) (citation omitted). An abuse of discretion can occur when the record does not substantially support the trial court's denial. In re H.L.L., 179 S.W.3d 894, 896-97 (Mo. banc 2005). Further, we must also determine whether substantial evidence supported the verdict. Campise v. Borcherding, 224 S.W.3d 91, 94 (Mo. App. E.D. 2007). In determining whether there was sufficient evidence to support the submission of future damages to a jury, we view the evidence in the light most favorable to the party offering the instruction. McKersie v. Barnes Hosp., 912 S.W.2d 562, 566 (Mo. App. E.D. 1995). We will only disturb the jury's verdict if there is a complete lack of probative evidence to support it. Campise, 224 S.W.3d at 94.
*382 Here, Ball sought to recover both past and future damages, and the verdict form itemized the damages award into four categories: past economic damages including medical damages, past non-economic damages for pain and suffering, future medical damages, and future non-economic damages for pain and suffering. As relevant to this appeal, the instructions defined "future medical damages" as "those damages arising in the future for medical expenses such as necessary drugs, therapy, and medical, surgical, nursing, X-ray, dental, custodial, and other health and rehabilitative services." The jury awarded Ball $185,000 for future medical damages, in addition to amounts for each of the other three categories. Only the award of future medical damages is at issue in Point I.[2]
In addition to compensation for past or present injuries caused by the defendant, a plaintiff may recover for future medical damages. Swartz v. Gale Webb Transp. Co., 215 S.W.3d 127, 130 (Mo. banc 2007). Initially, we note that a plaintiff can use evidence of future medical consequences from the present injury to establish either the value of the present injury, or, separately, to recover a monetary award to reimburse the plaintiff for the actual medical costs to treat a secondary injury that has not yet occurred but is a consequence of the original injury. See id. at 130-31. The different theories of recovery, however, have different burdens of proof. Id.
First, to aid the jury in determining the extent and value of a present injury, the plaintiff can present expert testimony to a reasonable degree of medical certainty that the defendant's conduct placed the plaintiff at an increased risk of suffering possible future consequences. Id. (citing Emery v. Wal-Mart Stores, Inc., 976 S.W.2d 439, 447 (Mo. banc 1998) ). When using evidence of future medical consequences to establish the value of a present injury, it is not necessary to establish that the future consequences are reasonably certain to occur; rather, the plaintiff must show merely that there is an increased risk of suffering possible future consequences. Second, by contrast, where a plaintiff seeks to recover the medical costs associated with a future secondary injury that has not yet occurred, the plaintiff must prove the future injury itself is reasonably certain to occur. Id. at 130 ("a plaintiff is only entitled to recover for an injury that has not yet occurred if the injury is reasonably certain to occur in the future") (citing Seabaugh v. Milde Farms, Inc., 816 S.W.2d 202, 210-11 (Mo. banc 1991) ).
Here, Ball sought to recover future medical damages for the cost of the future surgery she might need if the needle moved. Because Ball sought to recover for the costs of the potential future surgery itself, she had the burden to prove the future injury (i.e., the needle coming loose from the surrounding scar tissue) was reasonably certain to occur. See id. The question for this Court in Point I is whether Ball met this burden.
To show a future injury is reasonably certain to occur, "[t]he degree of probability of such [injury] must be greater than a mere likelihood." McKersie, 912 S.W.2d at 566. Future injuries that are contingent, speculative, or merely possible may not form the basis of a claim for future damages. Id. Missouri courts have *383 found a plaintiff is entitled to recover future medical damages where there was expert testimony that the plaintiff needed future surgery to address a complication from the original injury. See Brooks v. SSM Health Care, 73 S.W.3d 686, 698 (Mo. App. S.D. 2002) (where spinal injury caused by defendants' medical malpractice caused complications to plaintiff's preexisting injury which "necessitate[ed]" surgery, there was evidence that future medical expenses were "reasonably probable"). Similarly, the Missouri Supreme Court found a plaintiff was entitled to recover future medical damages where expert testimony established both that the plaintiff needed future steroid and cortisone treatments and also that if those treatments were unsuccessful plaintiff would "more likely than not" need surgery, because this evidence established the future injury was reasonably certain to occur. Seabaugh, 816 S.W.2d at 209-11.
Appellants here argue that the trial court should not have submitted the issue of future medical damages to the jury because there was no non-speculative evidence that Ball was reasonably certain to incur a future secondary injury stemming from the needle in her back, and we agree. While we are sympathetic to Ball that she must live with a needle in her back, the evidence adduced at trial was insufficient to establish that she is reasonably certain to require future medical services due to the needle in her back. Rather, Ball's expert Dr. Feinberg testified that the needle was fully encapsulated in and immobilized by scar tissue, and that it was "unlikely" to move any farther, barring a major trauma, such as a car accident or a bad fall onto that area. He agreed the likelihood of any future trauma was speculative, and thus he did not recommend further surgery to remove the needle. Dr. Metzler noted Ball's medical records showed the needle had not moved since 2010. Both Dr. Feinberg and Dr. Metzler testified that Ball had not reported pain at the site of the needle's current location in her body. As for the scar tissue growing larger, Dr. Feinberg testified that further growth should not happen barring an ongoing inflammatory problem. Ball did not present evidence of an ongoing inflammatory problem.
The instructions directed the jury to award future medical damages for drugs, therapy, and medical, surgical, nursing, X-ray, custodial, and other health and rehabilitative services. Neither Ball nor her expert witness testified that she needed drugs, therapy, or any of the listed services, including surgery. Unlike in Seabaugh, there was no evidence here that Ball needed further medical treatments to address complications from the needle in her back or that an eventual surgery was "more likely than not." See Seabaugh, 816 S.W.2d at 210-11. Unlike in Brooks, there was no evidence that Ball required home-assistance services or medical equipment due to the needle in her back, or that the needle "necessitat[ed]" future surgery. See Brooks, 73 S.W.3d at 698. There was no testimony by any witness stating that they knew of "likely" or "necessary" future medical treatments or services, other than speculation that if Ball incurred a trauma or if the scar tissue around the needle spread, she might have to have surgery in the future. This type of speculation about contingent or possible future injuries did not establish that a future injury was reasonably certain to occur. See McKersie, 912 S.W.2d at 566 (future injuries that are contingent, speculative, or merely possible should not form basis of claim for future damages). Without evidence that Ball was reasonably certain to incur future medical damages, there was no legal basis for a claim for future medical damages. See Swartz, 215 S.W.3d at 130 ; McKersie, 912 S.W.2d at 566. Regardless of one's sympathy *384 for Ball, her evidence unfortunately did not make a submissible case on the issue of future medical damages.
Ball on appeal points to her continuing pain at the incision site, future restrictions on her ability to receive massages and diagnostic MRIs, and her fear of incurring a trauma that would lead to future surgery, to argue she is entitled to future damages for pain, suffering, inconvenience, and the overall impact on her life. However, this argument supports the award of future non-economic damages, which the jury here awarded separately, and not the award of future medical damages. Appellants did not preserve for appeal the issue of future non-economic damages. During closing arguments, Ball specifically requested future non-economic damages for her future pain and suffering, including restrictions to her life, such as being unable to have massages and receive MRIs. By contrast, Ball predicated her request for future medical damages solely on the possibility the needle might continue to migrate or the scar tissue encapsulating the needle might grow.
The trial court agreed the evidence of future medical damages was speculative and accordingly would not allow Ball to submit to the jury a request for a specific amount of damages. Regardless, the trial court submitted the issue to the jury because no expert could rule out future medical damages. However, this is not the proper standard. To make a submissible case for future medical damages, Ball had the burden to prove that a future injury was reasonably certain to occur. See Swartz, 215 S.W.3d at 130-31. She failed to meet that burden here. The trial court abused its discretion in denying Appellants' motion for new trial on the issue of future damages, because there was insufficient evidence to submit this issue to the jury.
Point granted.
Point II
In their second point on appeal, Appellants argue the trial court erred in overruling its motion for a new trial because the trial court abused its discretion in excluding evidence of a defect in the needle. We disagree.
A trial court has broad discretion in admitting or excluding evidence, and we will reverse the trial court's decision only if the court clearly abused its discretion. St. Louis Co. v. River Bend Estates Homeowners' Ass'n, 408 S.W.3d 116, 123 (Mo. banc 2013). Our concern is not whether the evidence was admissible, but only whether the trial court abused its discretion in excluding it. McGuire v. Kenoma, LLC, 375 S.W.3d 157, 183-84 (Mo. App. W.D. 2012). A trial court's ruling amounts to an abuse of discretion when the ruling is "clearly against the logic of the circumstances then before the court and is so unreasonable and arbitrary that the ruling shocks the sense of justice and indicates a lack of careful deliberate consideration." Wilson v. P.B. Patel. M.D., P.C., 517 S.W.3d 520, 523 (Mo. banc 2017) (citation omitted). We will find an abuse of discretion in excluding evidence only where "the materiality and probative value of the evidence were sufficiently clear, and the risk of confusion and prejudice so minimal, that we could say that it was an abuse of discretion to exclude it." Williams v. Trans. State Airlines, Inc., 281 S.W.3d 854, 872 (Mo. App. E.D. 2009). Further, upon finding an abuse of discretion occurred, this Court will only reverse if the error was outcome determinative. Id.
To be admissible, evidence must be both logically and legally relevant.
*385 Cox v. Kansas City Chiefs Football Club, Inc., 473 S.W.3d 107, 116 (Mo. banc 2015). Evidence is logically relevant if it tends to make the existence of any relevant fact more or less probable, or if it tends to corroborate evidence that is itself relevant and has bearing on the principal issue in the case. Id. Evidence is legally relevant if its probative value is greater than its costs, including the prejudicial effect on the jury, confusion of the issues, misleading the jury, undue delay, waste of time, or cumulativeness. Kroeger-Eberhart v. Eberhart, 254 S.W.3d 38, 43 (Mo. App. E.D. 2007).
Ball here had the burden to prove Dr. Doty's actions deviated from the standard of care and were performed negligently, and the negligent acts were the proximate cause of the needle breaking off into Ball's back. See Wacker v. St. Francis Med. Ctr., 413 S.W.3d 37, 39 (Mo. App. E.D. 2013). Accordingly, Ball's expert testified Dr. Doty's negligent use of a 27-gauge, one and a half inch needle fell below the standard of care and this negligence caused Ball's injuries.
Appellants' theory of defense was that Dr. Doty was not negligent in her selection or use of the needle but that the sole cause of the needle breakage was because the needle itself was defective. To corroborate its defense theory, Appellants sought to introduce evidence that approximately one week after a needle broke off the hub of the syringe and became lodged in Ball's back, a second needle from the same box broke off from its hub during a trigger point injection into the shoulder of another patient. Both needles were 27-gauge, one-and-a-half-inch needles from the same box, both manufactured by Exel. The trial court excluded this evidence.
Appellants argue the proposed evidence of a second breakage was admissible because Appellants are permitted to argue the act of a third person, even a non-party, was the sole cause of Ball's injuries. See Mengwasser v. Anthony Kempker Trucking, Inc., 312 S.W.3d 368, 373 (Mo. App. W.D. 2010) ("The rules of evidence do not prevent a defendant from arguing that the act of a third person, even a non-party, was the sole cause of the plaintiff's injuries.") (citing Oldaker v. Peters, 817 S.W.2d 245, 252 (Mo. banc 1991) ); see also Jefferson v. Lyon Sheet Metal Works, 376 S.W.3d 37, 44 (Mo. App. E.D. 2012). Regardless, the question on appeal is not whether the evidence was admissible but whether the trial court abused its discretion in excluding it. See McGuire, 375 S.W.3d at 183-84.
Even where evidence is logically relevant, in that it tends to prove or corroborate an assertion by a party, the trial court may still exclude the evidence where its potential costs in confusing or misleading the jury outweigh its probative value. See Cox, 473 S.W.3d at 116. The determination of whether evidence is legally relevant falls within the broad discretion of the trial court, and we will reverse only when there is an abuse of that discretion that results in a substantial and obvious injustice. Pittman v. Ripley County Memorial Hosp., 318 S.W.3d 289, 294 (Mo. App. S.D. 2010). "The trial court is in the best position to evaluate whether the potential prejudice of relevant evidence outweighs its relevance." Id. (citation omitted).
The trial court here did not abuse its discretion in excluding Appellant's proposed evidence of the second needle breakage because its probative value did not outweigh its potential to confuse and mislead the jury. First, the proposed evidence lacked probative weight to support Appellants' defense. See Williams, 281 S.W.3d at 872 (no abuse of discretion in excluding evidence with limited probative weight). Appellants sought to show the *386 first needle broke because it was defective by showing a second needle from the same box also broke. However, the testimony of Dr. Doty and Dohack was insufficient to establish either needle broke because it was defective. To show either needle was defective, Appellants would have had to produce an expert witness who had examined the needles and could testify they were in fact defective. "Expert opinion testimony is required if the witness is testifying 'to matters requiring special skill or knowledge and is not within the knowledge or understanding of mankind generally.' " State v. Blurton, 484 S.W.3d 758, 770 (Mo. banc 2016) (citation omitted). Defects in the construction of a hypodermic needle plainly is not within the knowledge or understanding of a lay member of the jury. Appellants concede they had no such expert witness. Thus, the trial court did not abuse its discretion in excluding Appellants' evidence of a second breakage because it lacked probative value as to the issue of defectiveness. See Williams, 281 S.W.3d at 872.
Second, we note that no expert could have testified that either needle was defective because Appellants destroyed the needles or allowed the needles to be destroyed before they could be examined, raising the issue of spoliation. Spoliation is the destruction or significant alteration of evidence. See Marmaduke v. CBL & Assocs. Mgmt., Inc., 521 S.W.3d 257, 269 (Mo. App. E.D. 2017). Spoliation may also be the concealment or suppression of relevant evidence or the failure to determine whether certain evidence exists. Id. A determination that a party has committed spoliation must be supported by a finding or adverse inference of intent, and the party asserting spoliation has the burden to prove the opponent destroyed, altered, concealed, or suppressed the evidence at issue under circumstances manifesting fraud, deceit, or bad faith. Id. The failure to adequately explain the destruction of evidence can give rise to an adverse inference of intent, such as under circumstances where the alleged spoliator had a duty or should have recognized a duty to preserve the evidence. See id.; Morris v. J.C. Penney Life Ins. Co., 895 S.W.2d 73, 77 (Mo. App. W.D. 1995). The remedy for spoliation in Missouri is discovery or evidentiary sanctions in pending litigation. See Marmaduke, 521 S.W.3d at 269. Under this remedy, if the trial court finds spoliation, the trial court may grant an adverse evidentiary inference in favor of the victim of the spoliation that the missing evidence would have been unfavorable to the spoliator's position. Pisoni v. Steak 'N Shake Operations, Inc., 468 S.W.3d 922, 926 (Mo. App. E.D. 2015).
Appellants should have known here that litigation would arise surrounding the circumstances of the hypodermic needle breaking off its hub and becoming lodged in Ball's back, and therefore they should have known they had a duty to preserve for litigation the evidence involved in the breakage. Instead, Appellants agreed they allowed the needle that broke off in Ball's back to be destroyed; they destroyed the second needle that broke off into another patient's shoulder; and they destroyed every remaining needle in the box. Although Ball did not seek a remedy for spoliation, under the circumstances here, we certainly see no abuse of discretion in the trial court refusing to allow Appellants to argue the box of needles was defective after Appellants destroyed the only evidence that could have disproved their defense theory,[3] *387 We cannot find that the trial court abused its discretion in excluding evidence of a second needle failure. The trial court did not abuse its discretion in overruling Appellants' motion for new trial on this ground.
Point denied.
Point III
In their third point on appeal, Appellants argue the trial court erred in overruling their motion for new trial because the verdict-directing instruction included an informed-consent claim that was not supported by sufficient evidence, in that no expert defined the standard of care and there was no evidence of causation. We disagree.
We review de novo claims of instructional error, considering whether the instruction was supported by the evidence and law. Powderly v. S. Co. Anesthesia Assocs., Ltd., 245 S.W.3d 267, 276 (Mo. App. E.D. 2008). We view the evidence in the light most favorable to the party submitting the instruction. Id. To succeed on a claim of instructional error, the party challenging the instruction must show the instruction misdirected, misled, or confused the jury, resulting in prejudice. Id. Prejudice occurs when the error materially affected the merits and outcome of the case. State v. Richie, 376 S.W.3d 58, 64-65 (Mo. App. E.D. 2012).
An instruction must be supported by substantial evidence, which is evidence that is probative to the issues and assists the jury in deciding the case. Powderly, 245 S.W.3d at 276-77. Likewise, in a disjunctive instruction, each submission must be supported by substantial evidence. Id. at 277. The ultimate test is whether the instruction follows the law, and whether the jury can readily understand it. Id.
At trial, Ball submitted Instruction Number 7, which was a disjunctive instruction asserting six alternative bases for negligence. One ground stated that the jury must find for Ball if the jury believed Appellants "failed to obtain informed consent from plaintiff before attempting to retrieve the needle inside [Ball]."[4] Appellants objected to this instruction on the grounds that it lacked expert support and was not supported by sufficient evidence.
A physician has a duty to obtain informed consent from a patient before subjecting that patient to treatment. Wilkerson v. Mid-Am. Cardiology, 908 S.W.2d 691, 696 (Mo. App. W.D. 1995). Liability for negligence under the doctrine of informed consent arises where a patient consented to the treatment only because the treating medical practitioner did not sufficiently disclose the risks or alternatives to treatment. See Wuerz v. Huffaker, 42 S.W.3d 652, 656 (Mo. App. E.D. 2001). The breach of care stems from the manner in which the physician has obtained the patient's consent. Id. A submissible case for lack of informed consent has three elements: (1) nondisclosure, (2) causation, and (3) injury. Wilkerson, 908 S.W.2d at 696. The parties do not contest that an injury occurred, and the only elements at issue here are nondisclosure and causation.
*388 To meet the nondisclosure element, the plaintiff must show the disclosures made by the defendant did not meet the standard of what a reasonable medical practitioner would have disclosed under the same circumstances. Id. In general, the plaintiff must present expert testimony to show what exactly a reasonable medical practitioner would have disclosed under the same circumstances. Aiken v. Clary, 396 S.W.2d 668, 674 (Mo. 1965). Aiken, however, recognizes that where the defendant doctor testifies in great detail about the disclosures issued to the patient, this testimony can serve as an admission of what a reasonable medical practitioner would have disclosed under the same circumstances, thus waiving the requirement for expert testimony. Id. at 675 n.6. This is precisely the situation here.
Dr. Doty testified that informed consent is where the doctor explains to the patient either in writing or verbally what the doctor is going to do, how the doctor is going to perform the procedure, and what the risks are for the procedure. Dr. Doty then recounted specifically and in great detail what she verbally disclosed to Ball about how she planned to remove the needle, repeatedly giving Ball the choice to proceed with the attempted removal in the office or to go to the hospital to remove the needle. Ball chose to stay and undergo a removal attempt at Breakthrough. This testimony was sufficient to establish what a reasonable medical practitioner would have disclosed, thus waiving here the requirement for an expert. See id. The jury was not confused about what a reasonable disclosure was under the circumstances here and thus did not require additional clarification by an expert witness.
The issue here is not the relative degree of inadequate disclosure but is an issue of conflicting testimony between Appellants, who asserted complete disclosure, and Ball, who asserted zero disclosure. Contrary to Dr. Doty and Dohack's testimony, Ball testified that Dr. Doty did not verbally or in writing explain the procedure or give her a choice to go to a hospital. The jury is the sole judge of witness credibility and the weight and value of testimony. Keveney v. Mo. Military Acad., 304 S.W.3d 98, 104 (Mo. banc 2010). The jury is free to believe or disbelieve any, all, or none of a witness' testimony. Id. This Court does not substitute its judgment for that of the jury. Dr. Doty had a duty to inform Ball of the alternatives to attempting to remove the needle at Breakthrough, including the choice to go to the hospital for the removal attempts, and there was sufficient evidence in the record from which a jury could find Dr. Doty failed to make this disclosure.
Appellants next assert that Ball failed to make a submissible case on the element of causation. To meet the burden of proof on the causation element, the plaintiff must prove whether a reasonable person in plaintiff's position would have consented to the procedure had the treating medical practitioner made the proper disclosures of the risks and alternatives. Wilkerson, 908 S.W.2d at 696-97. Ball testified that not only did Dr. Doty fail to disclose that Ball could have proceeded to the hospital for a team of surgeons to remove the needle, but Dr. Doty also failed to disclose that her only prior experience in removing needles was that she once removed a needle from a patient's toe. Again, the jury is free to believe or disbelieve the evidence presented by any witness. Keveney, 304 S.W.3d at 104. From this evidence, the jury could have found a reasonable person in Ball's position would not have chosen to have Dr. Doty attempt to remove the needle if that person knew of Dr. Doty's lack of experience in removing needles and knew that proceeding to a hospital for surgery was a better possible *389 alternative. See Wilkerson, 908 S.W.2d at 696-97.
The trial court did not err in overruling Appellants' motion for new trial because the informed-consent claim contained in Instruction Number 7 was supported by sufficient evidence.
Point denied.
Point IV
In their fourth and final point on appeal, Appellants argue the trial court plainly erred in submitting a verdict directing instruction that omitted the conjunctive "and" between the first and second paragraphs, prejudicing Appellants and resulting in manifest injustice. We disagree.
Appellants concede that they did not preserve this issue for appeal and thus request plain error review. Plain error occurs only where the alleged error establishes substantial grounds for believing a manifest injustice or miscarriage of justice occurred. Hensley v. Jackson Co., 227 S.W.3d 491, 497 (Mo, banc 2007). "To establish that [an] instructional error rose to the level of plain error, appellant must demonstrate that the trial court so misdirected or failed to instruct the jury that it is evident that the instructional error affected the jury's verdict." Id. at 497-98 (citation omitted). Appellants cannot meet this burden here.
Trial courts are required to use Missouri Approved Instructions ("MAI") if an applicable instruction is available. Mo. R. Civ. P. 70.02(b) (2017). Giving an instruction in violation of the provisions of Rule 70.02 shall constitute error, but the prejudicial effect of such an error will be judicially determined. Rule 70.02(c). MAI 21.01 is the applicable instruction for medical negligence, and it reads:
Your verdict must be for the plaintiff if you believe:
First, defendant (here set out act or omission complained of ...), and
Second, defendant was thereby negligent, and
Third, as a direct result of such negligence plaintiff sustained damages.
MAI (7th ed. 1988) (emphasis added).
Here, Instruction Number 7 read:
Your verdict must be for the plaintiff if you believe:
First, defendants either:
1. used a 27 gauge needle to perform trigger point injections on plaintiff, or
2. used a 1 ½ inch length needle to perform trigger point injections on plaintiff, or
3. used a 50 cc syringe to perform trigger point injections on plaintiff, or
4. failed to obtain informed consent from plaintiff before attempting to retrieve the needle still inside plaintiff, or
5. failed to refer plaintiff to an emergency room prior to attempting retrieval of the needle, or
6. failed to use the proper fluoroscopic technique to retrieve the needle.
Second, defendants were thereby negligent, and
Third, as a direct result of such negligence plaintiff sustained damage.
Appellants note Instruction Number 7 omitted the conjunctive "and" between the paragraphs beginning with First and Second. Appellants argue this typographical error deviated from the language of the MAI, resulting in prejudice.
While the omission of the conjunctive "and" was an error, it did not result in prejudice because it did not so misdirect or *390 fail to instruct the jury that it affected the jury's verdict. See Hensley, 227 S.W.3d at 497-98. Even without the conjunctive "and" between paragraphs First and Second, the use of the word "thereby" in the language of paragraph Second refers the jury back to paragraph First, necessarily linking them. Despite the missing conjunctive "and," there is no logical way for a jury to read the instruction without understanding that they must find paragraph Second in addition to paragraph First. There is no ground for confusion here. See Goff v. St. Luke's Hosp. of Kansas City, 753 S.W.2d 557, 564 (Mo. banc 1988) (omission of conjunctive "and" between two paragraphs in instruction, while error because it deviated from MAI, did not cause prejudice when omission did not on its face cause confusion).
Appellants here have failed to carry their burden to show grounds for believing a manifest injustice or miscarriage of justice occurred. The trial court did not plainly err in submitting Instruction Number 7 to the jury.
Point denied.
Conclusion
That portion of judgment awarding $185,000 to Ball for future medical damages is reversed, and the cause is remanded for the trial court to remove those damages from the judgment. In all other respects, the judgment of the trial court is affirmed.
Robert M. Clayton III, J., and Angela T. Quigless, J., concur.

For purposes of this appeal, we assume that Exel and Exelint Medical Product is the same company.

To the extent Appellants challenge the jury's award of non-economic damages in the argument portion of their brief, this argument was not included in the Point Relied On and thus preserves nothing for appellate review. Mo. R. Civ. P. 84.04(e) (2017) ("The argument shall be limited to those errors included in the 'Points Relied On.' ").

Indeed, we believe the trial court would not have abused its discretion if it had further concluded that allowing Appellants to argue the box of needles was defective would almost certainly have prejudiced Ball and thus would have merited the sanctions laid out in Marmaduke v. CBL & Assocs. Mgmt., Inc., 521 S.W.3d 257 (Mo. App. E.D. 2017), not just for spoliation but also for violations of Rule 61.01.

To the extent Ball has included facts and argument that the informed consent forms she originally signed contained no warning that the needle might become separated from the hub, we disregard these facts and arguments as they were not the basis of liability submitted to the jury.