

# In the Missouri Court of Appeals
# Eastern District
## DIVISION THREE

| | | |
|---|---|---|
| PENZEL CONSTRUCTION COMPANY, INC., | ) | No. ED108821 |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of Cape Girardeau County |
| vs. | ) | |
| | ) | Honorable Benjamin F. Lewis |
| JACKSON R-2 SCHOOL DISTRICT, | ) | |
| | ) | |
| Appellant. | ) | FILED: July 20, 2021 |

## Introduction

The parties to this appeal appear for a second time before this Court in a contract dispute involving substantial delays and cost overruns in connection with a construction project for the renovation and addition to the Jackson High School campus. The Jackson R-2 School District (the "District") appeals from the judgment of the trial court following a jury trial finding for Penzel Construction Company, Inc. ("Penzel") on its claim for breach of contract as well as prompt-payment prejudgment interest ("PPP interest") under Section 34.057.[1] The District raises nine points on appeal, which we review in an order most naturally addressing the issues raised within.

Four of the District's points on appeal, Points Five, Seven, Eight, and Nine, concern jury instructions. Point Five challenges the PPP interest verdict-directing Instruction No. 16,

---

[1] All Section references are to RSMo (2016).

claiming the submitted instruction was not supported by the evidence and misstated the law by allowing Penzel to prove it had submitted a "demand" for payment rather than an "invoice." In Point Seven, the District maintains the trial court erred in giving Instruction No. 14 because it did not accurately instruct the jury on the law regarding the modified total cost method (the "MTCM") of calculating damages. In Point Eight, the District asserts the breach-of-contract verdict-directing Instruction No. 8 erroneously allowed the jury to find for Penzel on bases other than those set forth by this Court in prior proceedings in this case. In Point Nine, the District posits the pleadings and evidence did not support giving Instruction No. 12 regarding Penzel's avoidance to the District's affirmative defense of failure to give timely notice and in correspondingly modifying Instruction No. 11.

Two points argue Penzel failed to make a submissible case and challenge the trial court's denial of a judgment notwithstanding the verdict ("JNOV") and directed verdict, respectively. In Point Four, the District maintains that the trial court erred in denying its motion for JNOV because Penzel failed to make a submissible case under Section 34.057 for PPP interest. In Point Six, the District argues the trial court erred in denying its motion for a directed verdict because Penzel did not make a submissible case for damages under the MTCM.

Only one point challenges an evidentiary ruling of the trial court. In Point Three, the District contends the trial court abused its discretion in excluding the proffered testimony of an expert witness concerning an unreasonably low subcontractor bid because the testimony was directly probative on Penzel's damages and excluding the evidence prejudiced the District.

The final two points contend the prejudgment interest awarded by the trial court was improper. In Point One, the District alleges Penzel did not satisfy the contract requirements allowing the award of prejudgment interest. In Point Two, the District argues the trial court

2

erred in awarding general prejudgment interest in the amount specified by Section 408.020 because the trial court could not as a matter of law award both general prejudgment interest under Section 408.020 and PPP interest under Section 34.057.

We affirm the judgment of the trial court on all points. Specifically, because Instruction No. 16 governing Penzel's claimed PPP interest was supported by the evidence and the contested portions of Instruction No. 16 either did not misstate the law or did not materially prejudice the District, we deny Point Five. Because Instruction No. 14 did not incorrectly instruct the jury in any of the ways alleged, we deny Point Seven. Because the grounds for recovery in Instruction No. 8 were supported by Penzel's pleadings and evidence on its theories of recovery for breach of contract, the District's limited challenge to only one of Penzel's two theories of recovery fails to support a claim of reversible error, and we deny Point Eight. Because Instructions No. 11 and 12 concerning the District's affirmative defense and Penzel's avoidance did not prejudice the District in light of its own insufficient pleadings, we deny Point Nine.

Penzel made a submissible case for PPP interest under Section 34.057, therefore we deny Point Four. Penzel also made a submissible case for damages under the MTCM, therefore we deny Point Six.

The exclusion of the proffered expert witness testimony as to the reasonableness of the subcontractor's bid did not prejudice the District, thus we deny Point Three.

Finally, because the contract expressly provided for prejudgment interest and Penzel satisfied its conditions, the trial court did not err in awarding prejudgment interest under the contract, and we deny Point One. Because the District does not challenge whether prejudgment interest can be concurrently imposed under a contract and under Section 34.057, we deny Point Two.

Accordingly, we affirm the judgment of the trial court on all points. Additionally, we grant Penzel's motion for appellate attorneys' fees and remand to the trial court for a determination of reasonable attorneys' fees.

Factual and Procedural History

We previously considered this case on appeal in Penzel Constr. Co., Inc. v. Jackson R-2 Sch. Dist., 544 S.W.3d 214 (Mo. App. E.D. 2017) [hereinafter Penzel I]. We generally incorporate the facts as set forth in Penzel I but repeat some facts here in the interest of clarity. We will revisit further details from our analysis in Penzel I, as well as other facts of this case not otherwise stated here, as they become relevant to our review.

The District sought to build an addition to Jackson High School (the "Project"). As part of the bidding process, the District provided plans to Penzel, which in turn provided the plans to its subcontractor, Total Electric, Inc. ("Total Electric"), for the purpose of calculating a bid for the electrical work. Penzel entered into a contract with the District for the Project (the "Prime Contract"), which included separate but incorporated general conditions (the "General Conditions"). Additional facts about specific provisions of the Prime Contract and General Conditions relevant to this appeal will be stated in the discussion as needed. Penzel then entered into a contract with Total Electric to perform the electrical work at the bid price of $1,040,444 (the "Subcontract"). The District issued a notice to proceed to Penzel requiring substantial completion within 550 days, or approximately eighteen months. Total Electric did not substantially complete its work until approximately fifteen months after the deadline.

On April 1, 2010, Total Electric sent a letter (the "Letter") to Penzel regarding the status of the Project and owed compensation and requested that the Letter be forwarded to the District, which it was on April 6, 2010. Total Electric alleged the delays were due to defects and

4

inadequacies of the plans provided by the District, as well as delayed responses and inadequate responses by the District. Total Electric sought an additional $1,407,388 in compensation, itemized as $873,268 in labor inefficiency costs, $278,500 in additional project management and supervision costs, $192,982 in uncompensated change order work, $30,000 in estimated electrical consultant costs, $17,294 in wage escalation costs, and $15,344 in current interest due, which the Letter noted was subject to adjustment. The costs for labor inefficiency and additional project management and supervision were further broken down into the total number of hours and hourly cost for each. Total Electric stated that:

> It is recognized under the law that when plans and specifications are furnished to the bidding contractor and its subcontractors, there is an implied warranty that the plans and specifications are adequate, and that the intended result will occur when the contractor and its subcontractors follow the plans and specifications.

Total Electric indicated it was "willing to further discuss the dollar amounts claimed . . . because of the inadequacy of the drawings and specifications," and "willing to meet with [the District's representatives] and the project design team involved in the electrical design to address Total Electric's claims and damages." The District determined that none of the claims in the Letter were valid and declined to meet with Total Electric.

Total Electric entered into a liquidating agreement with Penzel allowing Penzel to bring a claim against the District for the damages caused to Total Electric by the allegedly defective plans furnished by the District.[2] Subsequently, Penzel brought a breach-of-contract claim against the District on the grounds that the District had made an implied warranty that the plans it provided were adequate and complete, pursuant to the theory accepted in United States v. Spearin, 248 U.S. 132 (1918). Specifically, Penzel alleged the plans were defective and caused

---

[2] As Penzel was the plaintiff at the trial court and is the respondent on appeal, we will on occasion refer to Total Electric as Penzel for the sake of simplicity where the distinction is immaterial.

damages to Total Electric. Penzel additionally alleged Total Electric contacted the District about a number of problems that arose due to the defective plans and that the District's responses were often delayed and inadequate, exacerbating Total Electric's damages. Penzel sought recovery of both Total Electric's damages—equivalent to and identically itemized as in the Letter, except for interest due—and Penzel's own damages due to markup for overhead and profit—equivalent to ten percent of the amount claimed in the Letter—caused by the defective plans' inadequacies and deficiencies, for a total of $1,531,248. Penzel relatedly sought PPP interest under Section 34.057.

Penzel pleaded that all conditions precedent had been satisfied under the Prime Contract. In its answer, the District responded only "denied" in its direct response to the averment that the conditions precedent had been satisfied, and responded with the affirmative defense that "[Penzel's] claims are barred by [Penzel's] own material breach of contract and failure to perform conditions precedent to [the District's] performance." The District also raised the affirmative defense that Penzel "failed to perform its obligations under the contract."

Penzel subsequently alleged that Total Electric initially kept detailed logs of the problems with the plans and the associated costs but that Total Electric abandoned this practice when it proved highly impractical and potentially costly. Penzel sought to prove damages using either the total cost method (the "TCM") or the MTCM.

The District moved for summary judgment, which the trial court granted. Penzel appealed, leading to our opinion in Penzel I. Penzel I remanded the matter for further proceedings after holding, among other findings, that the District was not entitled to judgment as a matter of law because Penzel provided sufficient evidence to create a genuine dispute as to the material fact of whether the District's plans were defective such that a jury could find in Penzel's

favor under the Spearin doctrine. Penzel I, 544 S.W.3d at 232–33, 245–46. We held that, under Missouri law, parties were permitted to bring claims under the Spearin doctrine for damages based on deficient plans and specifications in construction projects involving a governmental-entity owner. Id. at 226. Additionally, we held that the TCM was not valid under Missouri law, but that the MTCM was an acceptable manner of proving damages in certain circumstances. Id. at 237.

On remand and prior to trial, Penzel filed a motion in limine seeking to exclude evidence regarding whether Penzel or Total Electric had complied with the notice requirements for bringing claims under either the Prime Contract or the Subcontract. Specifically, among its arguments, Penzel maintained that whether notice was properly given was a condition precedent and that through its conclusory pleadings the District had admitted that Penzel had satisfied all conditions precedent. The trial court denied the motion in a pre-trial hearing. Prior to opening statements, Penzel requested that the District not be allowed to make any statements concerning notice for the same reasons given in the motion in limine. The trial court denied the request. Phil Penzel, the owner of Penzel, testified and, during cross-examination, the District began to ask him about the notice of claim provision in the Prime Contract. Penzel objected on the ground that the questioning was outside of the scope of the pleadings because the District had effectively admitted that all conditions precedent had been satisfied. The trial court overruled the objection, noting that it understood the objection to be continuing.

At trial, the parties disputed the significance of a subcontract between Penzel and SimplexGrinnell involving the installation of fire, clock, and sound systems (the "SimplexGrinnell Subcontract"), and how that subcontract affected the reasonableness of Total Electric's bid. Specifically, other bidders for a subcontract with Penzel had included both the

7

electrical work contained in the Subcontract and the other work contained in the SimplexGrinnell Subcontract in their bids, whereas Total Electric's lower bid did not include the latter. The final version of the SimplexGrinnell Subcontract contained the following clarification:

> This quote includes the labor to install the devices on the sound system and the components only on the fire alarm and clocks. [] Total Electric will remove the FA and Clock components from his bid and provide a $23,400 reduced price on the electrical number. SimplexGrinnell will provide the Sound and installation of the sound for $155,600 and the Fire Alarm and Clock Components for the refunded price of $23,400 for a total contract price of $179,000. ***This will result in no net change in price to [Penzel].***

(Emphasis added).

The District called David Lynn Whitt ("Whitt"), a retained expert witness with experience as a construction project manager, consultant, attorney, mediator, and arbitrator. The District asked Whitt if he had any opinion as to the reasonableness of Total Electric's bid, at which point Penzel objected on the ground that such an opinion was beyond the scope of the opinions he had given during his deposition. The District argued that even if Whitt had been obligated to disclose such an opinion had he held it at the time of deposition, he was now permissibly forming a new opinion based on overheard trial testimony. The trial court sustained the objection to exclude his testimony but allowed the District to make an offer of proof.

In the District's offer of proof, Whitt testified that Total Electric's bid was not reasonable. Whitt testified that he had previously seen only the original, unsigned SimplexGrinnell Subcontract but that as a result of earlier testimony he had inspected the final, signed SimplexGrinnell Subcontract containing the clarification. Whitt testified that he believed the total difference between Total Electric's bid and the next lowest bidder, when accounting for differences in work to be performed, was $210,706—an unreasonably large difference of 19.2 percent. Conversely, Whitt testified that if you adjusted Total Electric's bid up $192,980 to

8

account for differences in work to be performed, which he no longer believed was correct, the difference would be only 3.3 percent.

During the jury instruction conference and in their briefing, the parties disputed the proper form of several instructions relevant to this appeal. Verdict-directing Instruction No. 8 for the breach-of-contract claim stated:

> Your verdict on [Penzel's] Breach of Contract claim must be for [Penzel] if you believe:
>
> First, [the District] provided plans and specifications for the Project that were defective or [the District] unduly delayed decisions affecting the progress of construction of the Project, and
>
> Second, because of such failure, [the District's] contract obligations were not performed, and
>
> Third, [Penzel] was thereby damaged[.]
>
> [U]nless you believe that [Penzel] is not entitled to recover by reason of Instruction No. 11.

The District submitted Instruction No. 11 on its affirmative defense to Penzel's breach-of-contract claim, alleging that Penzel failed to give timely notice of a claim. Instruction No. 11 provided:

> Your verdict must be for [the District] on [Penzel's] Breach of Contract claim if you believe:
>
> First, [Penzel] or [Total Electric] failed to submit a claim within the time required by the contracts, and
>
> Second, [The District] was thereby prejudiced.
>
> Unless you find for [Penzel] under Instruction No. 12.

Penzel objected to Instruction No. 11 on multiple grounds, including that the District had not pleaded an affirmative defense of failure to give timely notice. Penzel proffered Instruction No. 12 concerning its avoidance to the District's affirmative defense, which stated:

9

Your finding must be for [Penzel] on the [District's] defense of failure to submit timely notice of claim submitted in Instruction No. 11 if you believe:
[Penzel] substantially complied with the notice provisions of the contracts; or
Compliance with the notice provisions of the contracts was waived.

In discussing what would become Instruction No. 14, the damages instruction for

Penzel's breach-of-contract claim, Penzel suggested that the jury should first be tasked to "find

that the nature of the particular losses make it impossible or highly impractical to determine the

damages *directly*[,]" and Penzel's proposed instructions reflected the same language. (emphasis

added). The District did not object to the language about determining damages "directly" as

opposed to determining them "to a reasonable degree of accuracy" during the instruction

conference or in its pre-trial memorandum. The trial court refused both Penzel's and the

District's versions of Instruction No. 14, instead instructing the jury in relevant part:

> If you find in favor of [Penzel], then you must award [Penzel] such sum as you believe will fairly and justly compensate [Penzel] for any damages you believe [Penzel] sustained as a direct result of the conduct of [the District] as submitted in Instruction No. 8.
>
> If you find in favor of [Penzel] and also find:
> 1. the nature of the particular losses make it impossible or highly impractical to determine the damages *directly*;
> 2. [Penzel's] bid or estimate was reasonable;
> 3. [Penzel's] actual costs were reasonable; and
> 4. [Penzel] was not responsible for the additional costs;
> then you may determine [Penzel's] damages as the reasonable costs actually incurred by [Penzel], subtracting the reasonable amount of [Penzel's] bid for the Project and subtracting any costs incurred by [Penzel] that were not caused by the actions of [the District].

(Emphasis added).

Verdict-directing Instruction No. 16 on Penzel's claim for PPP interest provided:

Your verdict must be for [Penzel] on its Prompt Pay claim if you believe:

First, [the District] did not make payment to [Penzel] of the amount due within thirty days following the date when [Penzel] delivered its demand to [the District]; and

10

Second, [the District's] withholding of such payment from [Penzel] was not done in good faith for reasonable cause.

The Court instructs the jury that "good faith" means a state of mind denoting honesty of purpose, freedom from intention to defraud, and being faithful to one's duty or obligation.

At the close of evidence, the District filed four motions for directed verdict, respectively arguing Penzel had failed to make a submissible case under the Spearin doctrine, Penzel had failed to satisfy the criteria for the application of the MTCM, Penzel had failed to make a submissible claim under Section 34.057 for PPP interest, and Penzel was not entitled to either general prejudgment interest or PPP interest under Section 34.057. The trial court denied all four motions.

The jury found in favor of Penzel on both its claims for breach of contract and for PPP interest, awarding $800,000 in damages for the former. In addition to the $800,000 awarded by the jury, the trial court awarded general prejudgment interest "at the legal rate" of 9 percent per annum commencing from May 10, 2010, PPP interest at the rate of 1.5 percent per month commencing from May 10, 2010, and attorneys' fees in the amount of $630,884. The District now appeals.

Points on Appeal

In Point Five, the District challenges Instruction No. 16, the PPP interest verdict director, alleging the instruction was not supported by the evidence and misstated the law by using the word "demand" instead of "invoice." In Point Seven, the District challenges Instruction No. 14 alleging the instruction did not accurately instruct the jury on the MTCM as directed in Penzel I. In Point Eight, the District challenges Instruction No. 8, the breach of contract verdict-director, because the instruction allowed recovery for breach of contract under the Spearin doctrine on bases that exceeded the scope and mandate in Penzel I. In Point Nine, the District challenges

11

Instruction No. 12 alleging that the pleadings and evidence did not support giving the instruction because Penzel failed to plead the avoidance.

In Point Four, the District argues Penzel failed to make a submissible case for PPP interest under Section 34.057 and in Point Six the District posits Penzel did not make a submissible case under the MTCM as set out in Penzel I.

In Point Three, the District contends the trial court abused its discretion in excluding Whitt's expert testimony as to the unreasonableness of Total Electric's bid because the testimony was relevant to damages and the exclusion of said testimony prejudiced the District.

In Point One, the District alleges the trial court erred in awarding prejudgment interest because Penzel failed to show that it was entitled to recover prejudgment interest under the Prime Contract. In Point Two, the District argues the trial court erred in awarding general prejudgment interest in the amount specified by Section 408.020 because the trial court concurrently awarded PPP interest under Section 34.057.

## Discussion

To promote an orderly review and analysis of this appeal, we will review the District's points out of sequence. Doing so will facilitate a more coherent discussion of the several points raised by the District. We begin by discussing the points challenging the jury instructions: Points Five, Seven, Eight, and Nine. We will next address the District's claims regarding the submissibility of Penzel's claims for breach of contract and related PPP interest. We then turn to Point Three's contention that the trial court abused its discretion in excluding Whitt's expert testimony, and lastly, we will review Points One and Two concerning the award of trial prejudgment interest.

**I.      Points Five, Seven, Eight, and Nine—Jury Instructions**

The District's challenges to the four jury instructions are premised upon differing legal principles including lack of evidentiary support, misstating the law, and not properly applying the express mandate of this Court in Penzel I. We will address the District's arguments for each instruction individually.

A.      Standard of Review

We review challenges to whether the jury was properly instructed de novo. Williams v. Mercy Clinic Springfield Cmtys., 568 S.W.3d 396, 413 (Mo. banc 2019) (internal citation omitted). "An instructional error is only grounds for reversal when the instruction misdirected, misled, or confused the jury and resulted in prejudice." Id. (internal quotation omitted). We will reverse only if the "error resulted in prejudice that materially affected the merits of the case." Id. The appellant has the burden of showing prejudice resulted from the erroneous instruction. Kader v. Bd. of Regents of Harris-Stowe State Univ., 565 S.W.3d 182, 186 (Mo. banc 2019). Critically, "[a]n issue submitted by an instruction must be supported by the evidence[.]" Spence v. BNSF Ry. Co., 547 S.W.3d 769, 777 (Mo. banc 2018) (internal quotation omitted). However, we review the evidence in the light most favorable to the challenged instruction's submission, and we will find the instruction was properly submitted if any theory supports its submission. Williams, 568 S.W.3d at 413.

The Supreme Court promulgated and approved the Missouri Approved Jury Instructions– Civil (7th ed.) ("MAI"). "Generally, whenever [the MAI] contains an instruction applicable to the facts of a case, such instruction shall be given to the exclusion of any other instructions on the same subject." Templemire v. W & M Welding, Inc., 433 S.W.3d 371, 376 (Mo. banc 2014) (internal quotation marks omitted) (quoting Rule 70.02(b)[3]). However, if the MAI misstates the

---

[3] All Rule references are to Mo. R. Civ. P. (2019).

13

substantive law governing a particular case, even if otherwise applicable, the instruction should not be given.  Id. (internal citation omitted).  While deviation from an applicable MAI constitutes error, we will determine the prejudicial effect of such error.  Id. (citing Rule 70.02(b)–(c)).

B.      Point Five—Instruction No. 16

Instruction No. 16 is the verdict-director for Penzel's claim for PPP interest.  The District contends Instruction No. 16 was not supported by the evidence and misstated the law.  Specifically, the District argues Instruction No. 16 improperly required the jury to find only that Penzel had delivered a "demand" for payment to the District when the statutory authorization for this special award of interest required the jury to find that Penzel had delivered the District an "invoice" for the work performed.  The District maintains that use of the term "demand" lessened the burden imposed on Penzel by Section 34.057.1.  Alternatively, the District suggests that even if use of the word "demand" were appropriate, the record contained insufficient evidence that a demand was made to support giving the instruction.  Additionally, the District maintains Instruction No. 16 improperly defined the term "good faith."[4]

**1.      The District Was Not Prejudiced By Use of the Word "Demand"**

Section 34.057.1(5) provides for penalty PPP interest of 1.5 percent per month for late payments to contractors from government agencies.  The interest is calculated from the end of the thirty-day period set in Section 34.057.1(1) until the contractor is fully paid.  Section 34.057.1(1)(b) provides that payment is to be made within thirty days of "[t]he date, as

---

[4] We identify two distinct legal arguments in Point Five, making the District's point relied on improperly multifarious under Rule 84.04(d)(1).  "Rule 84.04(d)(1) requires each point on appeal to concisely state the trial court ruling or action that is challenged and the legal reasons for the claim of reversible error."  Wynn v. BNSF Ry. Co., 588 S.W.3d 907, 912 (Mo. App. W.D. 2019).  "Points on appeal that 'group together multiple, independent claims rather than a single claim of error' preserve nothing for appellate review."  Id. (quoting Griffitts v. Old Republic Ins. Co., 550 S.W.3d 474, 478 n.6 (Mo. banc 2018)).  However, because we have the discretion to review non-compliant points relied on ex gratia when their arguments are readily ascertainable, we choose to exercise that discretion here.  See id. at 913.

14

designated by the public owner, upon which the ***invoice*** is duly delivered to the person or place designated by the public owner[.]" (emphasis added). Instruction No. 16 allowed the jury to award Penzel the penalty interest if the District did not pay Penzel the amount due within 30 days after Penzel delivered its demand for payment. The District argues that absence of the term "invoice" in Instruction No. 16 is fatal to Penzel's recovery of penalty interest under Section 34.057.1.

The record shows that Penzel presented the District with the Letter for payment following its completion of the work. The District challenges the use of the word "demand" in Instruction No. 16, claiming that the term "demand" is broader that the statutory term "invoice," thereby lessening the burden of proof required under Section 34.057.1. The District argues further that trial court did not define "demand" in the jury instructions, allowing the jury possibly to construe the term even more broadly. We need not decide if using the term "demand" in the instruction was improper because we find the Letter was an invoice. We are further persuaded that the District cannot meet its burden of demonstrating material prejudice and that it likely would have obtained a more favorable result had Instruction No. 16 used the word "invoice" instead of "demand." See Williams, 568 S.W.3d at 413; Kader, 565 S.W.3d at 186.

We are mindful that Section 34.057 is a remedial statute and that remedial statutes are to be liberally construed to effectuate their remedial purposes. City of Independence for Use of Briggs v. Kerr Constr. Paving Co., 957 S.W.2d 315, 321 (Mo. App. W.D. 1997) (citing State ex rel. LeFevre v. Stubbs, 642 S.W.2d 103, 106 (Mo. banc 1982)) (additional citation omitted). The dictionary defines "invoice" as "an itemized statement furnished to a purchaser by a seller and usu. specifying the price of goods or services and the terms of sale" with a cross-reference to a definition of the word "bill" reading "an itemized account that states the separate costs of goods

15

sold, services rendered, or work done[.]" WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE UNABRIDGED 215, 1190 (2002); see also *Invoice*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("An itemized list of goods or services furnished by a seller to a buyer, usu. specifying the price and terms of sale; a bill of costs.")

Here, the Letter itemized the claimed damages for services provided and work performed across six categories. Penzel further individualized two of the categories listed in the Letter, labor inefficiency costs and additional project management and supervision costs, by their corresponding number of hours and hourly rates. Applying the plain meaning of the term "invoice," especially in light of our requisite liberal construction of Section 34.057.1, we conclude the Letter more than adequately served as an invoice. See Briggs, 957 S.W.2d at 321.

The District characterizes the Letter as something other than an invoice, suggesting that the Letter merely invited the District to discuss the terms of payment, that the amount of payment demanded was calculated by using the TCM which is not recognized in Missouri law, and that the Letter could not possibly be an invoice if, as Penzel alleges, it was impossible or highly impractical to determine the damages to a reasonable degree of accuracy.

We acknowledge that the Letter expressed a willingness by Penzel to discuss with the District the amounts Penzel claimed it was owed by the District. But the District cites no authority, and we are aware of none, supporting the proposition that a willingness to discuss the specific amounts claimed to be owed precludes the Letter from being an invoice. Indeed, the record is clear that the Letter precisely itemized the amounts that Total Electric believed it was owed. Total Electric characterized its actions of delivering the Letter as making "claims" to "damages" and specifically invoked the Spearin doctrine as the basis for the claimed damages. Second, even assuming arguendo that Total Electric used the TCM to calculate the amount

16

claimed in the Letter, the District similarly cites no authority for its proposition that the Letter cannot embody the requisite components of an invoice because the amount claimed was calculated using a method not cognizable under Missouri law. Whether the measure of the amount claimed in the Letter is recognized in Missouri is a legal issue separate and distinct from whether the Letter constitutes an invoice. We note that the same misunderstanding afflicts the District's final contention. In particular, while the MTCM requires a plaintiff to show that it is impossible or highly impractical to determine the damages to a reasonable degree of accuracy, plaintiffs who seek to recover contract damages under the doctrine support their claims for damages on underlying costs and amounts like those itemized in the Letter. See Penzel I, 544 S.W.3d at 235 (providing that "calculating damages under the [MTCM] involves the use of estimated figures"). We find the District's arguments unavailing and without merit and contrary to our duty to construe the word "invoice" liberally. See Briggs, 957 S.W.2d at 321. In short, we are not persuaded that the District's arguments provide any meaningful guidance as to the meaning of the word "invoice."

Lastly, we reject the notion that the term "demand" is broader than "invoice" in a way that prejudiced the District given the facts of this case. The District reasons that the Letter could not be an invoice because Total Electric was merely offering a proposal or framework under which the parties could discuss the underlying issues. Following the logic of this argument, the jury could have just as easily found the Letter was not a demand, thereby benefiting the District. See Child. Int'l v. Ammon Painting Co., 215 S.W.3d 194, 204–05 (Mo. App. W.D. 2006) (internal citation omitted) (finding an email was not a demand where it lacked a specific date for payment and provided a list of future "estimated costs" based on "assumptions," and noting that "[a] request for an 'understanding' on a balance owed is insufficient demand").

17

Because the Letter constituted an invoice, we find the evidence supported the trial court's giving the PPP interest verdict-directing Instruction No. 16. See Briggs, 957 S.W.2d at 321. Furthermore, the District cannot meet its burden of showing it was materially prejudiced and that it would have likely received a more favorable result had Instruction No. 16 used the word "invoice" instead of "demand." See Williams, 568 S.W.3d at 413; Kader, 565 S.W.3d at 186.[5]

## 2. The Trial Court Used an Appropriate Definition of "Good Faith"

Instruction No. 16 defined "good faith" as "a state of mind denoting honesty of purpose, freedom from intention to defraud, and being faithful to one's duty or obligation." The District argues this definition was improper because it was sourced from a criminal case and because the appropriate meaning of good faith can vary depending on the context. See State ex rel. Nixon v. Russell, 45 S.W.3d 487, 497 (Mo. App. W.D. 2001) (providing the appropriate definition of good faith varies depending on the context where considering the issue in the context of a county sheriff's challenge to his ouster from office). Instead, the District suggests that Instruction No. 16 should have defined good faith as approved in a civil case concerning an insurance contract dispute:

> The Court instructs the jury that "good faith" means freedom from knowledge of circumstances which ought to put a person upon inquiry. This includes the exercise of reasonable discretion under the circumstances, and an honest effort to ascertain the facts and to make a determination based on such ascertained facts.

See Stix Friedman & Co. v. Fid. & Deposit Co. of Md., 563 S.W.2d 517, 521 (Mo. App. S.L.D. 1978).

---

[5] We note the District's claim that Instruction No. 16 should have used the term "invoice" rather than "demand" overlaps with the parties' dispute regarding the subsection of Section 34.057 under which the PPP interest was awarded, given that the trial court did not specify the subsection in its judgment. If the interest was awarded under Section 34.057.1(8), as we conclude infra in our analysis of Point Four, tasking the jury with finding the Letter was an invoice, rather than a demand, would have been inappropriate as that subsection has no such requirement.

18

The MAI do not provide a set definition of good faith in the context of a claim for PPP interest. Where the MAI lacks an on-point definition, the parties may submit their own definitions subject to the discretion of the trial court. See McGuire v. Kenoma, LLC, 375 S.W.3d 157, 169 (Mo. App. W.D. 2012) (internal citation omitted).

Here, the District's challenge to Instruction No. 16's definition of good faith lacks merit. While we acknowledge that Russell was a very different case, it was not a criminal proceeding as the District characterizes it, but rather involved the ouster of a sheriff from office. Russell, 45 S.W.3d at 489. Similarly incorrectly, Stix Friedman & Co. involved no instructional challenge nor any dispute about the definition of good faith. See Stix Friedman & Co., 563 S.W.2d at 521 (considering an appeal from the trial court's JNOV where the parties agreed as to the definition of good faith). More fundamentally, we reject the premise of the District's argument that the definition of good faith used in a criminal case would necessarily be improper in a civil case. We note further that the District offers no specific reason why the definition of good faith in Instruction No. 16 was error. See Russell, 45 S.W.3d at 497. Finally, not only has the District failed to elaborate on why the definition in Instruction No. 16 is incorrect, but the District does not explain how the use of that definition prejudiced the District. See Kader, 565 S.W.3d at 186.

The use of the word "demand" instead of "invoice" was supported by the evidence at trial and did not prejudice the District. See id. Similarly, the District has failed to meet its burden to show that Instruction No. 16's definition of good faith was incorrect or that it prejudiced the District. See id. Point Five is denied.

C.     Point Seven—Instruction No. 14

In Point Seven, the District argues Instruction No. 14 did not accurately instruct the jury as to the MTCM as set out in Penzel I. Specifically, the District contends that Instruction No. 14 did not mirror MAI 4.01; erroneously instructed the jury to find whether the nature of the

19

particular losses made it impossible or highly impractical to determine the damages "directly" rather than "to a reasonable degree of accuracy"; and was not supported by evidence satisfying the requirements for utilizing the MTCM.[6]

### 1. The District Failed to Preserve Its Argument Concerning the Use of the Word "Directly"

The trial court rejected both parties' proposed damage instructions and instead submitted its own instruction. In discussing what would become Instruction No. 14, Penzel repeatedly suggested the jury first should be tasked to determine whether the nature of the particular losses make it impossible or highly impractical to calculate the damages *directly.* The trial court used the term "directly" as proposed by Penzel. Although the District raised several objections to Instruction No. 14 during the instruction conference and in its pre-trial memorandum regarding jury instructions, the District did not object to using the term "directly." Neither did the District offer alternative language instructing the jury to determine whether the damages were impossible or highly impractical to determine "to a reasonable degree of accuracy." The District first raised this argument in its motion for new trial. Neither the motion for new trial nor the District's brief on appeal identifies any earlier instance of presenting the argument to the trial court, and we can find none.

"Counsel shall make *specific* objections to instructions considered erroneous." Rule 70.03 (emphasis added). "No party may assign as error the giving or failure to give instructions unless that party objects thereto on the record during the instructions conference, stating distinctly the matter objected to *and the grounds of the objection*." Id. (emphasis added). To

---

[6] We reiterate that raising multiple legal reasons supporting a claim for reversible instructional error is impermissibly multifarious under Rule 84.04(d)(1). See Wynn, 588 S.W.3d at 912. Nevertheless, we exercise our discretion to review Point Seven on its merits. See Scott v. King, 510 S.W.3d 887, 892 (Mo. App. E.D. 2017) ("[W]e cautiously exercise this discretion because each time we review a noncompliant brief ex gratia, we send an implicit message that substandard briefing is acceptable. It is not.").

preserve a claim of instructional error the objection must be specific and made "before the jury retires to consider its verdict[.]" Douglas v. St. Louis Cold Drawn, Inc., 439 S.W.3d 775, 780 (Mo. App. E.D. 2014) (internal citation omitted). Additionally, "a point on appeal must be based upon the theory voiced in the objection at trial, and an appellant cannot expand or change on appeal the objection as made." Id. (internal quotation omitted). "We will not convict a trial court of error on an issue that it had no chance to decide." Id. (internal quotation omitted). Here, by failing to specifically object at trial to the use of the word "directly" as opposed to the phrase "to a reasonable degree of accuracy" prior to the jury's deliberations, the District failed to preserve its argument on appeal, which is an improper expansion of its arguments made during trial. See id.; Rule 70.03.

Although we have discretion to review unpreserved arguments for plain error, "plain error review is rarely applied in civil cases, and may not be invoked to cure the mere failure to make proper and timely objections." Atkinson v. Corson, 289 S.W.3d 269, 276 (Mo. App. W.D. 2009) (internal quotation omitted). "We will reverse for plain error in civil cases only in those situations when the injustice of the error is so egregious as to weaken the very foundation of the process and seriously undermine confidence in the outcome of the case." Id. at 276–77 (internal quotation omitted). Here, the District failed to properly and timely object on identical grounds to the argument on appeal, and we decline to exercise uninvited plain-error review of that argument. Id. at 276.

However, the District did preserve its claims as to the applicability of MAI 4.01 and whether the evidence supported giving the instruction, and we review Point Seven for those arguments below.

### 2. MAI 4.01 Was Inapplicable

21

The District contends that MAI 4.01 was applicable to the present case and that Instruction No. 14 should have mirrored its language. See Templemire, 433 S.W.3d at 376 (citing Rule 70.02(b)). Instruction No. 14 as given read:

> If you find in favor of [Penzel], then you must award [Penzel] such sum as you believe will fairly and justly compensate [Penzel] for any damages you believe [Penzel] sustained as a direct result of the conduct of [the District] as submitted in Instruction No. 8.
>
> If you find in favor of [Penzel] and also find:
> 1. the nature of the particular losses make it impossible or highly impractical to determine the damages directly;
>
> 2. [Penzel's] bid or estimate was reasonable;
>
> 3. [Penzel's] actual costs were reasonable; and
>
> 4. [Penzel] was not responsible for the additional costs;
>
> then you may determine [Penzel's] damages as the reasonable costs actually incurred by [Penzel], subtracting the reasonable amount of [Penzel's] bid for the Project and subtracting any costs incurred by [Penzel] that were not caused by the actions of [the District].

The District contends instead that Instruction No. 14 should have mirrored MAI 4.01, including the circumstantially required "failure to mitigate tail," as follows:

> If you find in favor of [Penzel], then you must award [Penzel] such sum as you believe will fairly and justly compensate [Penzel] for any damages you believe [Penzel] sustained as a direct result of the conduct of [the District] as submitted in Instruction No. __. If you find that [Penzel] failed to mitigate damages as submitted in Instruction Number _, in determining [Penzel's] total damages you must not include those damages that would not have occurred, without such failure.

While the District's proffered instruction accurately tracks MAI 4.01, including the required mitigation of damages tail, we conclude that MAI 4.01 would have misstated the substantive law in this case due to the use of the MTCM, and therefore the trial court did not err in not instructing the jury on MAI 4.01. See id.

The MTCM has four prongs: "(1) the nature of the particular losses make it impossible or highly impractical to determine them with a reasonable degree of accuracy; (2) the plaintiff's bid or estimate was realistic; (3) its actual costs are reasonable; and (4) it was not responsible for the added expenses." Penzel I, 544 S.W.3d at 236 (internal quotation omitted). The first prong is a mandatory showing that a plaintiff must make in order to use the MTCM as a measure of damages. Id. at 237 (internal citations omitted) (providing "[p]laintiffs are generally required to establish that proving actual losses is impossible or highly impractical"). "The latter three prongs, however, concern numerical values and monetary amounts which accommodate adjustments." Id. In short, the MTCM allows the plaintiff to recover a sum in the amount equal to the added costs caused by the defendant's breach, subject to adjustments as necessary. Id. at 238–39 (explaining the preceding and providing a hypothetical example illustrating how to calculate damages using the MTCM).

Here, Penzel sought to prove its damages at trial using the MTCM. Fundamentally, MAI 4.01 does not contemplate using the MTCM and, in fact, would provide instructions contrary to the applicable law for calculating damages under the MTCM. See MAI 4.01; Penzel I, 544 S.W.3d at 236 (listing the four prongs of the MTCM). For instance, had Instruction No. 14 mirrored MAI 4.01 as suggested by the District, the jury never would have been instructed on the matter of the damages needing to be "impossible or highly impractical to determine," which is a threshold requirement under the MTCM. See Penzel I, 544 S.W.3d at 236–37. Indeed, an instruction mirroring MAI 4.01 may have even prejudiced the District, given that it would not have required the jury to make that threshold finding. See id. Similarly, the District contends that Instruction No. 14 allowed the jury to reach a different determination on damages depending on varied hypothetical findings—e.g., whether Penzel's bid was reasonable—but this flexibility

23

is exactly what the additional three prongs of the MTCM are designed to address. Id. at 237. Because MAI 4.01 is not applicable where the plaintiff seeks to recover damages under the MTCM, the trial court correctly did not use MAI 4.01.[7] See id. at 236–37; Templemire, 433 S.W.3d at 376 (citing Rule 70.02(b)).

### 3.     Instruction No. 14 Was Supported by the Evidence

The District also argues that Instruction No. 14 was not supported by the evidence because Penzel failed to show any of the four prongs of the MTCM for the same reasons as stated in the District's Point Six. For the same reasons we deny Point Six, infra, and mindful of the appropriate standard of review, we find that Instruction No. 14 was supported by the evidence. Williams, 568 S.W.3d at 413; Spence, 547 S.W.3d at 777.

In conclusion, as to Instruction No. 14, we find no prejudicial trial-court error. See Templemire, 433 S.W.3d at 376 (citing Rule 70.02(b)); Williams, 568 S.W.3d at 413; Spence, 547 S.W.3d at 777. Point Seven is denied.

### D.     Point Eight—Instruction No. 8

In its eighth point on appeal, the District challenges Instruction No. 8, the verdict-director for the breach-of-contract claim because it allowed Penzel to recover damages under the Spearin doctrine on grounds other than those set out in Penzel I. Specifically, the District argues that the portion of Instruction No. 8 directing the jury to find for Penzel if it found the District "unduly delayed decisions affecting the progress of construction of the Project" was erroneous because damages resulting from "unduly delayed decisions" by the District is not cognizable under the Spearin doctrine.

---

[7] While we hold that MAI 4.01 is not applicable when a plaintiff seeks to utilize the MTCM, we need not reach and are not holding on the issue of whether Instruction No. 14 was an appropriate or correct instruction in all respects. Our holding is limited to finding that the trial court properly rejected using MAI 4.01 in instructing on MTCM damages.

24

We need not reach whether the <u>Spearin</u> doctrine as adopted in <u>Penzel I</u> extends to damages for unduly delayed decisions, because the District's argument is inapposite in the context of this case.[8]  In its petition, Penzel pleaded the District's undue delay in reaching decisions as a separate ground on which the District breached the contract and on which Penzel was entitled to recover.  We previously recognized that allegation as a separate basis for breach of contract.  <u>Penzel I</u>, 544 S.W.3d at 224 (describing the contention that the District unduly delayed decisions as a further allegation).  The District consistently fails to acknowledge that Penzel pleaded two separate theories for breach of contract, instead incorrectly characterizing Penzel's claim as solely resting upon the <u>Spearin</u> doctrine.  We must affirm the giving of an instruction if it is supported by any theory and evidence.  <u>See</u> <u>Williams</u>, 568 S.W.3d at 413.  Accordingly, we will not charge the trial court with error where the District did not challenge the pleaded theory corresponding to the disputed portion in Instruction No. 8.[9]  <u>See id.</u>  Point Eight is denied.

### E.    Point Nine—Instructions No. 11 and 12

In Point Nine, the District posits that because Instruction No. 12 relating to Penzel's avoidance of the District's affirmative defense was not supported by the pleadings or evidence, the trial court erred in submitting both Instruction No. 12 and the District's corresponding Instruction No. 11 setting forth its affirmative defense that Penzel failed to submit a timely claim as required under the contract to the extent that it referenced Instruction No. 12.  Specifically, the

---

[8] We note, however, that our discussion of the <u>Spearin</u> doctrine in <u>Penzel I</u> considered damages arising out of delays caused by inadequate plans and specifications.  <u>Penzel I</u>, 544 S.W.3d at 226–27 (internal citations omitted) (addressing the relationship of inadequate plans and specifications to project delays).

[9] The District also argues that even if the <u>Spearin</u> doctrine extends to unduly delayed decisions, a plaintiff must provide expert testimony to establish that the decisions were unduly delayed.  While this argument fails because we do not reach the broader <u>Spearin</u> doctrine argument raised, we note that the District did not preserve this point because the District only raised this issue in the argument portion of its brief and did not include it in its point on appeal as required.  <u>See Ball v. Allied Physicians Grp., L.L.C.</u>, 548 S.W.3d 373, 382 n.2 (Mo. App. E.D. 2018) (citing Rule 84.04(e)).

25

District contends that it properly pleaded the affirmative defense that Penzel did not timely make a claim for damages under the contract, but Penzel did not plead an avoidance of that defense by alleging Penzel either substantially complied with the required notice provision or the District waived the requirement of giving timely notice.

We first consider the rules governing pleading affirmative defenses. "A pleading that sets forth an affirmative defense or avoidance shall contain a short and plain statement of the facts showing that the pleader is entitled to the defense or avoidance." Rule 55.08. "Bare legal assertions are insufficient to plead an affirmative defense. A pleading that makes a conclusory statement and does not plead the specific facts required to support the affirmative defense fails to adequately raise the alleged affirmative defense, and the alleged affirmative defense fails as a matter of law." Exec. Bd. of Mo. Baptist Convention v. Mo. Baptist Univ., 569 S.W.3d 1, 15 (Mo. App. W.D. 2019) (internal quotation omitted). "The effect of a deficiently pled affirmative defense is the same as if no attempt is made to allege a defense." Id. (internal quotation omitted).

"A defense consisting of an affirmative avoidance to any matter alleged in a preceding pleading must be pleaded." Rule 55.01. "[A]ny requirement to plead an affirmative avoidance cannot [] arise unless and until the affirmative defense sought to be avoided has been properly pleaded." Allen v. Titan Propane, LLC, 484 S.W.3d 902, 905 (Mo. App. S.D. 2016).

Penzel maintains that it was relieved of its obligation to plead an avoidance to the District's affirmative defense because the District did not properly plead the affirmative defense. See id. Specifically, Penzel argues that the District's affirmative defenses that "[Penzel] failed to perform its obligations under the contract," and "[Penzel's] claims are barred by [Penzel's] own material breach of contract and failure to perform conditions precedent to [the District's]

26

performance" were insufficiently pleaded because the District offered mere conclusory statements and did not identify the requisite specific facts supporting the affirmative defense. See Rule 55.08; Exec. Bd. of Mo. Baptist Convention, 569 S.W.3d at 15. We agree. Not only are the affirmative defenses pleaded as mere conclusions lacking any nexus to a particular fact, but the District's pleading offers not even a hint that the basis of the defense is Penzel's alleged failure to give timely notice of its claim. See Rule 55.08; Exec. Bd. of Mo. Baptist Convention, 569 S.W.3d at 15. Because the District did not adequately plead its affirmative defense, the defense fails as a matter of law. See Rule 55.08; Exec. Bd. of Mo. Baptist Convention, 569 S.W.3d at 15.

Any instructional errors in Instruction Nos. 11 and 12 are attributable to the District because the instructions improperly instructed the jury on the District's insufficiently pleaded affirmative defense. See Rule 55.08; Exec. Bd. of Mo. Baptist Convention, 569 S.W.3d at 15. It follows that any such error favored the District, benefiting it with instructions relating to a defense to which it was not entitled. Accordingly, the District cannot demonstrate that it was prejudiced by the instructions as needed to show reversible error. See Kader, 565 S.W.3d at 186. Point Nine is denied.

## II. Points Four and Six—Denial of JNOV and Directed Verdict

We next address the District's claims that the trial court erred in denying its motions for a directed verdict and JNOV on Penzel's claims. Point Four focuses on the trial court's denial of the District's motion for JNOV and alleges that Penzel did not make a submissible case for PPP interest under Section 34.057. Point Six reasons that the trial court erred in denying the District's motion for a directed verdict on the breach-of-contract claim because Penzel did not make a submissible case under the MTCM as set out in Penzel I.

### A. Standard of Review

27

"Review of the trial court's decision to sustain or overrule a motion for directed verdict depends on whether the plaintiff made a submissible case," which we review de novo. Johnson v. Auto Handling Corp., 523 S.W.3d 452, 459 (Mo. banc 2017) (internal quotation omitted). The same principle applies to our review of the trial court's decisions concerning JNOV. Delacroix v. Doncasters, Inc., 407 S.W.3d 13, 39 (Mo. App. E.D. 2013) (internal citation omitted). "A case may not be submitted unless each and every fact essential to liability is predicated on legal and substantial evidence," and a motion for directed verdict "should be granted if the defendant shows that at least one element of the plaintiff's case is not supported by the evidence." Ellison v. Fry, 437 S.W.3d 762, 768 (Mo. banc 2014) (internal citations omitted). "The plaintiff may prove essential facts by circumstantial evidence as long as the facts proved and the conclusions to be drawn are of such a nature and are so related to each other that the conclusions may be fairly inferred." Moore v. Ford Motor Co., 332 S.W.3d 749, 756 (Mo. banc 2011) (internal quotation omitted). We review "the evidence in a light most favorable to the plaintiff, including all reasonable inferences while disregarding all contrary evidence and inferences." Johnson, 523 S.W.3d at 460 (internal quotation omitted).

 B. Point Four—Submissibility of PPP Interest

In Point Four, the District posits Penzel failed to make a submissible case for PPP interest under Section 34.057. Specifically, the District argues the evidence adduced at trial was insufficient to show Penzel met the following requirements to make a submissible case: that Penzel submitted a proper invoice; that Penzel complied with the preconditions for receiving final payment and bringing claims against the District; that the District lacked good faith in withholding payment from Penzel; that Penzel had a viable theory of recovery prior to Penzel I; and that a fixed amount was due on a date certain prior to the entry of the judgment. Because we

28

already have concluded in our analysis of Point Five that Penzel submitted an invoice for its work, we will address each of the District's remaining arguments.[10]

### 1. The District's Argument That Penzel Had No Viable Theory for Recovery before <u>Penzel I</u> Is Not Preserved

"A motion for a directed verdict shall state the specific grounds therefor." Rule 72.01(a). Where a motion for directed verdict does not contain a specific argument, that argument is not preserved for appeal. <u>See</u> <u>Howard v. City of Kansas City</u>, 332 S.W.3d 772, 791 (Mo. banc 2011) (finding an argument concerning the sufficiency of the evidence for future damages was unpreserved where it was not one of the specific grounds set out in the motion for directed verdict). A deficiency in a motion for directed verdict extends to a motion for JNOV. <u>See</u> <u>id.</u> at 790 ("Where an insufficient motion for directed verdict has been made, a subsequent post-verdict motion is without basis and preserves nothing for review."); <u>see also</u> Rule 72.01(b) (providing that a motion for JNOV is a motion to have "judgment entered in accordance with the [prior] motion for a directed verdict"). In Points Four and One the District reasons that the trial court improperly awarded prejudgment interest because Penzel had no viable theory for recovery against the District before this Court issued its opinion in <u>Penzel I</u>. We note, however, that none of the District's four motions for directed verdict concern any of the novel aspects of <u>Penzel I</u> that may have prohibited the award of prejudgment interest on Penzel's claim against the District. Accordingly, the District's argument is unpreserved for appellate review. <u>See</u> <u>Howard</u>, 332 S.W.3d at 791; Rule 72.01(a).

---

[10] Penzel submits that the District has waived its right to challenge this point on appeal because the District unqualifiedly stated before the trial court that it would accept nominal damages, and thereby, admitted liability. We agree with the District that Penzel's argument misrepresents the record, and we find the District has not waived the point.

We again emphasize that while this Court may review unpreserved arguments for plain error, we rarely do so, even when requested. Atkinson, 289 S.W.3d at 276. "We will reverse for plain error in civil cases only in those situations when the injustice of the error is so egregious as to weaken the very foundation of the process and seriously undermine confidence in the outcome of the case." Id. at 276–77 (internal quotation omitted). Here, the District has not requested plain-error review, and no egregious injustice is apparent to us. See id. at 276–77. We decline to engage in uninvited plain-error review of this argument. See id. at 276.

### 2. The District Admitted That Penzel Satisfied All Conditions Precedent and Penzel Satisfied Section 34.057

In further challenging the submissibility of Penzel's claim for PPP interest, the District contends that Penzel failed to satisfy the "preconditions" necessary to receive final payment and bring its claims against the District, thereby rendering PPP interest under Section 34.057 unavailable to Penzel. Specifically, the District alleges Penzel offered no evidence that it provided the documentation necessary to trigger final payment under the Prime Contract and that Penzel did not timely give notice of its claims against the District. Penzel counters that the "preconditions" referred to by the District are actually conditions precedent under the Prime Contract, and that the District admitted in its pleadings that Penzel satisfied all conditions precedent.

We first turn to Penzel's contention that the District admitted in its pleading that Penzel satisfied all conditions precedent. In its petition, Penzel averred that it satisfied all conditions precedent to the Prime Contract. The District answered with a general denial. Under Rule 55.16, a party may plead satisfaction of conditions precedent generally, but "[a] denial of performance or occurrence shall be made specifically and with particularity." By answering Penzel's averment with only a general denial, the District is deemed to have admitted that Penzel

30

satisfied all conditions precedent.  See Rule 55.16; Rule 55.09 (providing a failure to deny constitutes an admission); Sides Constr. Co. v. Arcadia Valley R-II Sch. Dist., 565 S.W.2d 761, 770 (Mo. App. S.L.D. 1978) (rejecting an argument that a condition precedent had not been satisfied and finding the disputed condition precedent had been admitted where it had not been specifically challenged in the appropriate responsive pleading); see also AllStar Cap., Inc. v. Wade, 352 S.W.3d 633, 636 (Mo. App. E.D. 2011) (holding that the failure to specifically deny a corporation's capacity to sue or be sued constitutes an admission under the analogous Rule 55.13); Gilmore v. Bi-State Dev. Agency, 936 S.W.2d 193, 194 (Mo. App. E.D. 1996) (internal citation omitted) ("A general denial is treated as an admission of the corporate existence and capacity.").

Missouri case law recognizes an exception to the rule that a general denial constitutes an admission where the issue in dispute is tried by consent of the parties.  See Rule 55.33(b); Sides Constr. Co., 565 S.W.2d at 770–71 (holding the condition precedent was not tried by consent where one party objected to the condition precedent that had been admitted through the pleadings).  However, the exception does not apply.  The record clearly shows any issue challenging Penzel's satisfaction of all conditions precedent was not tried by consent of the parties as Penzel filed a pre-trial motion in limine and raised a continuing objection during trial on this very issue.  See Rule 55.33(b); Sides Constr. Co., 565 S.W.2d at 770–71.

Accepting that the District admitted through its pleadings that Penzel satisfied all conditions precedent, we next consider the effect of the District's admission on Penzel's ability to submit its claim for PPP interest.

The District first reasons that Penzel failed to make a submissible case under Section 34.057 because it did not satisfy the "preconditions" for bringing a claim under the Prime

Contract.[11]  Specifically, the District contends that Penzel failed to comply with Section 4.3.2 of the General Conditions which provides the following time limits on claims:

> Claims by either party must be initiated within 21 days after occurrence of the event giving rise to such Claim or within 21 days after the claimant first recognizes the condition giving rise to the Claim, whichever is later.  Claims must be initiated by written notice to the Architect and the other party.

Under the Prime Contract, timely initiation of a claim is a condition precedent to bringing a valid claim.  See, e.g., Brentwood Glass Co. v. Pal's Glass Serv., Inc., 499 S.W.3d 296, 302 (Mo. banc 2016) (per curiam) (finding timely notice of intent to file a mechanic's lien is a "condition precedent" to creating a valid lien); Sides Constr. Co., 565 S.W.2d at 770–71 (finding that noncompliance with the contract due to late completion was the denial of a condition precedent that had to be pleaded specifically); McNeal v. Manchester Ins. & Indem. Co., 540 S.W.2d 113, 120 (Mo. App. S.L.D. 1976) (internal citations omitted) (finding conditions in an insurance contract relating to suit and forwarding of suit papers are conditions precedent to recovery).  Given our finding that the District admitted Penzel's averments that it satisfied all conditions precedent to the Prime Contract, the District has admitted that Penzel complied with the time limits for submitting claims under the Prime Contract.  The District cannot retract its admission.

Second, the District maintains that Penzel cannot recover PPP interest under Section 34.057 because final payment was not due.  Specifically, the District argues that Penzel did not satisfy Section 5.2 of the Prime Contract, Section 9.10 of the General Conditions, or the requirements of Section 34.057.  Section 5.2 of the Prime Contract provides in relevant part:

> [Section] 5.2 FINAL PAYMENT

---

[11] Sporadically during this appeal the District raises arguments relating to provisions of the Subcontract rather than the Prime Contract.  Penzel contends the District is misguided in this approach because Penzel is not a party to the Subcontract. We need not address Penzel's concerns because the issues raised by the District in its motions for directed verdict do not involve compliance or non-compliance with the Subcontract.  The District's arguments concerning the Subcontract are not preserved for appellate review.  See Howard, 332 S.W.3d at 791; see also Rule 72.01(a).

[Section] 5.2.1 Final payment, constituting the entire unpaid balance of the Contract Sum, shall be made by the [District] to [Penzel] when:

.1      [Penzel] has fully performed the Contract except for [Penzel's] responsibility to correct Work . . . and to satisfy other requirements, if any, which extend beyond final payment; and

.2      a final Certificate for Payment has been issued by the Architect.

Section 9.10 of the General Conditions reads, in relevant part:

[Section] 9.10 FINAL COMPLETION AND FINAL PAYMENT

[Section] 9.10.1 Upon receipt of written notice that the Work is ready for final inspection and acceptance and upon receipt of a final Application for Payment, the Architect will promptly make such inspection and, when the Architect finds the Work acceptable under the Contract Documents and the Contract fully performed, the Architect will promptly issue a final Certificate for Payment stating that to the best of the Architect's knowledge, information and belief, and on the basis of the Architect's on-site visits and inspections, the Work has been completed in accordance with terms and conditions of the Contract Documents and that the entire balance found to be due the Contractor and noted in the final Certificate is due and payable. ***The Architect's final Certificate for Payment will constitute a further representation that conditions listed in Section 9.10.2 as precedent to [Penzel's] being entitled to final payment have been fulfilled.***

[Section] 9.10.2 Neither final payment nor any remaining retained percentage shall become due until [Penzel] submits to the Architect [the necessary submissions].

(Emphasis added). As clearly noted above, Section 9.10.1 of the General Conditions expressly provides that the submissions required of Penzel under that section are conditions precedent to final payment by the District. Because the District is deemed to have admitted that Penzel satisfied all conditions precedent to the Prime Contract, the District has admitted that Penzel has satisfied the conditions precedent rendering final payment due. See Rules 55.09, .16; Sides Constr. Co., 565 S.W.2d at 770. When read in conjunction, Section 5.2 of the Prime Contract and Section 9.10.1 of the General Conditions unequivocally require the submission of an architect's final certificate of payment as a condition precedent to the District's final payment to Penzel. Consistent with our treatment of the other conditions, the District is deemed to have

33

admitted that the architect issued the final certificate of payment concluding that Penzel was due the entire balance of payment.  See Rules 55.09, .16; Sides Constr. Co., 565 S.W.2d at 770.

Finally, we examine the statutory language at issue with respect to final payment due. Section 34.057.1(5) mandates that "[a]ll estimates or invoices for . . . final payments, shall be paid promptly and shall be subject to late payment charges" of 1.5 percent interest per month which begins to accrue at the end of a thirty-day period designated in the statute.  Section 34.057.1(8), which governs final payment, provides the following guidelines as to when final payment shall be considered due:

> The public owner shall make final payment of all moneys owed to the contractor, including any retainage withheld . . . , less any offsets or deductions authorized in the contract or otherwise authorized by law, within thirty days of the due date. ***Final payment shall be considered due upon the earliest of the following events***: (a) Completion of the project and filing with the owner of all required documentation and certifications, in complete and acceptable form, in accordance with the terms and conditions of the contract;
>
> (b) ***The project is certified by the architect or engineer authorized to make such certification on behalf of the owner as having been completed, including the filing of all documentation and certifications required by the contract, in complete and acceptable form***; ***or***
>
> (c) The project is certified by the contracting authority as having been completed, including the filing of all documentation and certifications required by the contract, in complete and acceptable form.

(Emphasis added).  Of the three alternatives set forth in the statute, the language of Section 34.057.1(8)(b) tracks the aforementioned language of the Prime Contract and General Conditions.  The District's argument is unavailing because it admitted that the requirements of 34.057.1(8)(b) were satisfied when it admitted that Penzel satisfied all conditions precedent. Payment was due to Penzel and interest began accruing at the end of the thirty-day period.[12]

---

[12] We note that none of the District's points on appeal challenge the judgment's May 10, 2010, starting date for interest accrual.

### 3. Penzel's Claim Was for a Liquidated Amount

"The purpose of statutory prejudgment interest is to promote settlement of lawsuits and fully compensate plaintiffs by accounting for the time-value of money." Child. Int'l, 215 S.W.3d at 203. "Prejudgment interest may only be awarded where the claim is liquidated, which means the claimed amount is fixed and determined or readily ascertainable by computation or a recognized standard."[13] Travelers Com. Cas. Co. v. Vac-It-All Servs., Inc., 451 S.W.3d 301, 313 (Mo. App. E.D. 2014) (internal quotation omitted). "Generally, prejudgment interest on unliquidated claims is not recoverable, for the reason that where the person liable does not know the amount he owes, he should not be considered in default because of failure to pay." Id. (internal quotation omitted). However, damages that simply require calculation to be determined are liquidated. See, e.g., Watters v. Travel Guard Int'l, 136 S.W.3d 100, 111 (Mo. App. E.D. 2004) (finding damages were liquidated where equal to amount paid minus the amount that had already been reimbursed); A.G. Edwards & Sons, Inc. v. Drew, 978 S.W.2d 386, 397 (Mo. App. E.D. 1998) (finding damages were liquidated where equal to commission paid plus the amount of medical bills not covered by the insurance policy minus the deductible). However, "[e]xact calculation is not necessary for a claim to be liquidated[.]" Travelers Com. Cas. Co., 451 S.W.3d at 313 (internal citation omitted).

In determining whether a claim is for a liquidated amount, we "must consider the character of the claim, not the defense to it[.]" Huffstutter v. Michigan Mut. Ins. Co., 778 S.W.2d 391, 395 (Mo. App. E.D. 1989). As a result, damages may be sufficiently ascertainable

---

[13] While immaterial, we note that some courts refer to claimed amounts that are "fixed and determined or readily ascertainable by computation or a recognized standard" to fall within an exception to the general liquidated damage requirement rather than being liquidated amounts. See, e.g., McKinney v. State Farm Mut. Ins., 123 S.W.3d 242, 251 (Mo. App. W.D. 2003) (citing Catron v. Columbia Mut. Ins. Co., 723 S.W.2d 5, 8 (Mo. banc 1987) (Robertson, J., concurring)).

even if the monetary value at issue is disputed or the parties' experts reach different conclusions as to the loss suffered. Bailey v. Hawthorn Bank, 382 S.W.3d 84, 106 (Mo. App. W.D. 2012) (internal citation omitted). Relatedly, "[w]here a defendant contests only the issue of liability, but does not dispute the amount of damages, or asserts a counter-claim or set-off, the plaintiff's claim is considered liquidated even though the amount of his ultimate liability remains in doubt." Ohlendorf v. Feinstein, 670 S.W.2d 930, 935 (Mo. App. E.D. 1984) (internal citation omitted). Similarly, "[t]hat the ultimate award was less than the amount requested does not preclude an award of prejudgment interest on the ascertained damages." Travelers Com. Cas. Co., 451 S.W.3d at 313 (internal citation omitted). As an example, the Western District held the damages were liquidated in an insurance dispute where the plaintiff's artwork was destroyed in a fire, the plaintiff presented the defendant insurance company a demand for a fixed amount, and the plaintiff supported that valuation at trial through expert testimony. Jablonski v. Barton Mut. Ins. Co., 291 S.W.3d 345, 350 (Mo. App. W.D. 2009).

Conversely, prejudgment interest is not properly imposed on personal injury claims where the compensation is disputed because such damages are unclear in that "[t]he amount of personal injury damages to be awarded are primarily within the discretion of the jury." McKinney v. State Farm Mut. Ins., 123 S.W.3d 242, 251 (Mo. App. W.D. 2003) (internal citations omitted). Similarly, damages sought under an indemnification provision for legal expenses have been found to not be liquidated because the amounts are necessarily indefinite prejudgment. Nusbaum v. City of Kansas City, 100 S.W.3d 101, 109 (Mo. banc 2003) (per curiam). Furthermore, "[a]n estimate of damages," to be incurred, rather than actual damages suffered, "is not liquidated." Child. Int'l, 215 S.W.3d at 204 (finding damages to be unliquidated where the plaintiff sent the defendant an estimate rather than actual costs for damages that had

36

not yet been sustained).  Finally, due to their inherently speculative nature, damages based on lost profits are not liquidated.  Scullin Steel Co. v. Paccar, Inc., 708 S.W.2d 756, 766 (Mo. App. E.D. 1986) (citing Wiggins Ferry Co. v. Chi. & A.R. Co., 27 S.W. 568, 574 (Mo. 1894), *opinion adopted*, 30 S.W. 430 (Mo. banc 1895)).

No precedential authority since our opinion in Penzel I has considered whether claims utilizing the MTCM to prove damages are to be treated as liquidated or unliquidated for the purposes of prejudgment interest.  Both parties make facially reasonable arguments as to whether the amount sought by Penzel first in the Letter and then in its petition is properly considered liquidated under Missouri law.  Given the broad interpretations and varied exceptions as to the criterion for what constitutes a "liquidated amount," we hold that the damages claimed by Penzel in the Letter and its petition meets those criterion and allows the award of prejudgment interest. See Travelers Com. Cas. Co., 451 S.W.3d at 313.

The District argues that in Penzel I we compared claims utilizing the MTCM to measure damages to claims for lost profits, which are treated as not liquidated.  See Penzel I, 544 S.W.3d at 235 (comparing the MTCM measure for damages and claims for lost profits because both require the use of estimates and both allow for a plaintiff to establish damages with a lower degree of reasonable certainty); Scullin Steel Co., 708 S.W.2d at 766.  The District posits that claims utilizing the MTCM are similarly not liquidated.  While the District's argument has an ostensible logic, a closer review of Penzel I shows the misdirection of the District's position.  In Penzel I, our comparison of the MTCM to claims of lost profits focused on the quantum of proof required for a plaintiff to establish damages to a reasonable certainty.  See Penzel I, 544 S.W.3d at 235.  We did not address whether the amount at issue was liquidated.  See id.  Critical to the issues presented here, lost profit damages are deemed not liquidated, not because they involve

37

the use of estimates, but because lost profits are inherently counterfactual, ***seeking damages for what might have hypothetically occurred***; indeed, "the general rule as to recovery of anticipated profits of a commercial business is that they are too uncertain and dependent upon changing circumstances to warrant a judgment for their recovery," whereas there is no such general rule for the contractual damages sought here. See Bailey, 382 S.W.3d at 107 (internal quotation omitted) (discussing why lost profits damages are not liquidated). The estimates involved in the present claim utilizing the MTCM approach to measure damages are neither counterfactual nor based on what might occur in the future. To the contrary, Penzel seeks to recover the actual damages that it already has incurred. See id.; Child. Int'l, 215 S.W.3d at 204.

We are firmly persuaded that cases utilizing the MTCM more closely identify with liquidated claims where "the claimed amount is fixed and determined ***or readily ascertainable by computation or a recognized standard.***" See Travelers Com. Cas. Co., 451 S.W.3d at 313 (emphasis added) (internal quotation omitted). We recognized the use of the MTCM as a proper measure of damages in Penzel I. When using the MTCM, damages are calculated using the following equation: Actual costs minus the plaintiff's bid, any portion of plaintiff's bid that was unreasonable, and any unreasonable costs for which the plaintiff was responsible. See Penzel I, 544 S.W.3d at 236–37. Using this formula, claims utilizing the MTCM are analogous to other claims where damages are determined by similar calculations, claims which we have found are liquidated. See, e.g., Watters, 136 S.W.3d at 111 (damages liquidated where equal to amount paid minus the amount that had already been reimbursed); A.G. Edwards & Sons, Inc., 978 S.W.2d at 397 (damages liquidated where equal to commission paid plus the amount of medical bills not covered by the insurance policy minus the deductible). Indeed, the primary variables of actual costs and plaintiff's bid are readily ascertainable, whereas the remaining variance is in the

38

nature of a set-off, which does not affect whether a claim is liquidated.  See Ohlendorf, 670

S.W.2d at 935.  While the calculation conducted under the MTCM may not be exact, "[e]xact

calculation is not necessary for a claim to be liquidated."  Travelers Com. Cas. Co., 451 S.W.3d

at 313.

The District further argues that the claim here was not liquidated because the jury only

awarded Penzel $800,000—significantly less than Penzel's claimed damages.  This argument

fails because "[t]hat the ultimate award was less than the amount requested does not preclude an

award of prejudgment interest on the ascertained damages."  See id.  Similarly, it does not matter

that, as here, defendants in cases utilizing the MTCM are likely to disagree with the plaintiff's

assessment of damages, present expert testimony that challenges the plaintiff's assessment of

damages, or argue that the claimed damages should be reduced because of the plaintiff's

behavior.  See Bailey, 382 S.W.3d at 106; Ohlendorf, 670 S.W.2d at 935; see also Huffstutter,

778 S.W.2d at 395 ("The court must consider the character of the claim, not the defense to it,

when determining whether the claim is liquidated.").  The record amply supports a finding that

Penzel sought a liquidated amount of damages.  Penzel utilized a recognized standard of

damages that could be ascertained by computation.  The presence of reasonable disputes over the

amount owed does not undermine the character of Penzel's claim.[14]  See Travelers Com. Cas.

Co., 451 S.W.3d at 313; Huffstutter, 778 S.W.2d at 395.

### 4. There Was Sufficient Evidence of an Absence of Good Faith on the Part of the District

---

[14] The judicial authorities cited in this portion of the opinion address claims brought under Section 408.020 rather than Section 34.057.  The parties do not direct us to any precedential authority requiring an award of PPP interest under Section 34.057 to arise from a liquidated damage amount, and we have not found any such authorities.  We do not reach this potential question of first impression because we have found that the amount sought in the present case was liquidated.

39

"[A] claim under [Section 34.057] should not be submitted to the jury unless there is evidence of a substantial nature indicating that the defendant acted in bad faith and without reasonable cause." Leo Journagan Constr. Co. v. City Utils. of Springfield, Mo., 116 S.W.3d 711, 725 (Mo. App. S.D. 2003) (internal citation omitted). However, "[t]he drafters of this legislation intended to allow courts to impose the interest penalty whenever bad faith is found." Mays-Maune & Assocs., Inc. v. Werner Bros., Inc., 139 S.W.3d 201, 209 (Mo. App. E.D. 2004) (internal citation omitted). The question of whether withholding payment was in bad faith may be submitted to the jury on the basis of circumstantial evidence. See Briggs, 957 S.W.2d at 321; see also Moore, 332 S.W.3d at 756 (generally providing plaintiffs may make a submissible case through circumstantial evidence).

Viewing the evidence in the light most favorable to Penzel, while the jury could have potentially found that the District did not act in bad faith, we find the record contains sufficient circumstantial evidence to support the submission of the issue to the jury. See id.; Leo Journagan Constr. Co., 116 S.W.3d at 725; Johnson, 523 S.W.3d at 460.

The record shows the jury was presented with substantial evidence that the District not only refused to compensate Penzel for large sums that were calculated using the MTCM, but also refused payment of $192,982 for unpaid change order work claimed in the Letter. The record reflects evidence that the District determined that it owed ***none of the amount claimed in the Letter***, ***including the amount arising out of unpaid change order work***. The District refused to even meet with Penzel to discuss the claims contained in the Letter. Additionally, to the extent Penzel was seeking damages using the MTCM, Penzel alleged and provided evidence that the District had made serious misrepresentations during the bidding process, delayed responses, and was generally unhelpful and uncooperative regarding the resulting problems during the

40

construction process. Given this evidence, a factfinder reasonably could have believed that the District's refusal to pay Penzel was merely the last bad faith act taken by the District following its pattern of bad faith conduct during Penzel's performance of its contractual obligations. See Briggs, 957 S.W.2d at 321.

Substantial evidence supported the submission of the issue of bad faith to the jury, and the trial court did not err in submitting the issue on that ground. See Ellison, 437 S.W.3d at 768.

### 5. Summary

In brief review of Point Four, the District failed to preserve its argument that Penzel had no viable theory for recovery before Penzel I. The District is deemed to have admitted through its pleadings that Penzel satisfied all conditions precedent, thus satisfying both the Prime Contract and Section 34.057. Penzel's claim was for a liquidated amount, and the record contains sufficient evidence from which the jury reasonably could find that the District acted in bad faith in refusing payment. Thus, the trial court did not err in submitting the issue of PPP interest to the jury, See Johnson, 523 S.W.3d at 459, and did not err in denying the District's motion for JNOV. See Delacroix, 407 S.W.3d at 39. Accordingly, we deny Point Four.

### C. Point Six—Submissibility under the MTCM

In Point Six, the District argues the trial court erred in denying its motion for a directed verdict because Penzel did not make a submissible case under the MTCM as set out in Penzel I. Specifically, the District contends that Penzel failed to prove the following: that the difficulty in proving actual damages was not due to Penzel's own failure to maintain records, that Penzel's bid was reasonable, that Penzel made reasonable adjustments to alleged costs, and that Penzel considered other causes of damages. The District further maintains that an award resulting from the use of the MTCM is an equitable remedy to which Penzel was not entitled due to its own bad conduct.

41

### 1. The District Failed to Preserve Its Recordkeeping and Equity Arguments

We must again address preservation issues impacting our review of the District's appeal. The District moved for directed verdict generally alleging that Penzel had not introduced the requisite evidence to utilize the MTCM. But in its motion, the District neither argued that Penzel's failure to maintain adequate records precluded using the MTCM to measure damages, nor that measuring damages through the MTCM was inequitable because of Penzel's own conduct. As a result, neither of these arguments are preserved for our review. See Rule 72.01(a) ("A motion for a directed verdict shall state the specific grounds therefor."); Howard, 332 S.W.3d at 791 (providing specific grounds concerning submissibility must be included in a motion for directed verdict to be preserved for appellate review). Additionally, we note that the District did not include its equitable argument in this point on appeal, thereby further limiting our review. See Rule 84.04(e) ("The argument shall be limited to those errors included in the 'Points Relied On.'"); Ball v. Allied Physicians Grp., L.L.C., 548 S.W.3d 373, 382 n.2 (Mo. App. E.D. 2018) (citing Rule 84.04(e)). We yet again decline to conduct unsolicited plain-error review in this civil case. See Atkinson, 289 S.W.3d at 276–77.

### 2. The District's Remaining Arguments Misunderstand the MTCM as Set Forth in Penzel I

In its preserved arguments, the District maintains that Penzel failed to make an evidentiary showing that (1) its bid was reasonable, (2) that Penzel made reasonable adjustments to alleged costs, and (3) that Penzel considered other causes of damages. Even assuming arguendo that these arguments are correct, the trial court nevertheless did not err in submitting the MTCM to the jury.

Under the MTCM, a plaintiff must show that "proving actual losses is either impossible or highly impractical through a more direct means" than the MTCM. Penzel I, 544 S.W.3d at

42

237 (internal citations omitted).  The District's argument in this point does not challenge the evidentiary sufficiency of the first prong of the MTCM, but focuses only on the latter three prongs concerning the reasonableness of Penzel's bid, the reasonableness of Penzel's costs, and the extent to which the District was not responsible for the additional costs.  See id. at 236–37.  In addressing the MTCM, it is important to understand that these three prongs are not required elements in the same way as the first prong; rather, the additional prongs "concern numerical values and monetary amounts which accommodate adjustments."  Id. at 237.  Indeed, when we analyzed the TCM, we emphasized that a plaintiff utilizing the TCM must prove all four "elements" by a preponderance of the evidence and that a failure to prove any one element was fatal, whereas we clarified that a plaintiff need prove *only* the first element under the MTCM.  Id. at 236–37 (internal citation omitted).  Furthermore, with regard to the latter three prongs, we emphasized that "to the extent the plaintiff fails to show all of these factors, the total damages can be adjusted downward to reach an equitable amount."  Id. at 239.  This Court in Penzel I expressly contemplated that the MTCM could be submitted to a jury as a measure of contract damages even if a plaintiff failed to prove one or more of the factors comprising the second, third, and fourth prongs of the MCTM.  Id.

        To be clear, plaintiffs seeking to utilize the MTCM still bear two important evidentiary burdens.  First, plaintiffs must present evidence that "proving actual losses is either impossible or highly impractical through a more direct means[.]"  Id. at 237.  Second, "[b]efore the jury can address these questions of fact, the plaintiff bears the burden of presenting competent and substantial evidence to establish an adequate basis for calculating a rational estimate of damages."  Id. at 236 (internal quotation omitted).  The District has not questioned the sufficiency of either of these evidentiary burdens at this juncture.

43

Because proof of the latter three prongs of the MTCM was not a prerequisite to submit Penzel's damage claim to the jury, the trial court did not err in submitting said claim. See id. at 236–37, 239; Johnson, 523 S.W.3d at 459. Accordingly, the trial court did not err in denying the District's motion for a directed verdict. See Johnson, 523 S.W.3d at 459. Point Six is denied.

## III.     Point Three—Exclusion of Whitt's Testimony

In its third point on appeal, the District contends that the trial court abused its discretion in excluding the testimony of Whitt. The District claims Whitt's expert testimony was admissible relevant evidence supporting the District's claim that Total Electric's bid was unreasonably low so as to defeat or lessen Penzel's recovery of damages under the MTCM. The District reasons that it was prejudiced by the exclusion of Whitt's testimony.[15]

### A.     Standard of Review

Trial courts are "granted considerable discretion in deciding whether to admit or exclude evidence." Williams, 568 S.W.3d at 416. "The admission or exclusion of evidence will not be grounds for reversal absent a clear abuse of discretion." Shallow v. Follwell, 554 S.W.3d 878, 881 (Mo. banc 2018) (internal citation omitted). "A [trial] court abuses its discretion when its ruling is clearly against the logic of the circumstances then before the [trial] court and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration." Id. (internal quotation omitted). "Even if the trial court has abused its discretion in excluding evidence, [we are] loath to vacate a jury's verdict and resulting judgment on such grounds." Lozano v. BNSF Ry. Co., 421 S.W.3d 448, 451 (Mo. banc 2014) (internal citation omitted). As a result, even if the trial court erred in excluding evidence we will not

---

[15] To the extent this point on appeal presumes that Penzel's inability to prove Total Electric's bid was reasonable would necessarily preclude application of the MTCM, we rejected that interpretation of the law in our discussion of Point Six.

44

reverse a judgment unless it materially affected the merits of the action by affecting the result or outcome of the case.  Id. at 451–52 (internal citations omitted).  Therefore, "exclusion of evidence which has little, if any, probative value is usually held not to materially affect the merits of the case and hence, error in rejecting such evidence is not grounds for reversal[.]"  Id. at 452 (internal quotation omitted).

B.      Analysis

The parties raise various arguments concerning Whitt's testimony: was the testimony truly a surprise to Penzel; did the timing of Whitt's change of opinion require disclosure by the District of the change; and whether a less drastic remedy was appropriate even if Whitt's change of opinion resulted in unfair surprise.  We do not address these arguments because the record does not evidence the required prejudice to the District to justify reversal due to the trial court's exclusion of the proffered expert testimony.  See id. at 451–52.

At trial, the District sought to admit evidence of Whitt's opinion regarding the reasonableness of the Total Electric bid that Whitt had not offered at his deposition.  The basis of Whitt's proffered opinion was the following clarification in the final SimplexGrinnell Subcontract:

> This quote includes the labor to install the devices on the sound system and the components only on the fire alarm and clocks. [] Total Electric will remove the FA and Clock components from his bid and provide a $23,400 reduced price on the electrical number.  SimplexGrinnell will provide the Sound and installation of the sound for $155,600 and the Fire Alarm and Clock Components for the refunded price of $23,400 for a total contract price of $179,000. ***This will result in no net change in price to [Penzel].***

(Emphasis added).  The District contends that the import of this clarification is that it significantly impacted how Total Electric's bid should be compared to the other bids when determining the reasonableness of Total Electric's bid, one of the prongs of the MTCM.  See Penzel I, 544 S.W.3d at 236–37.  We are not persuaded.

45

The competing bids for the Subcontract entailed performing more work than what Total Electric presented in its bid and ultimately performed under the Subcontract. This additional work did not go unperformed, but rather was performed pursuant to the SimplexGrinnell Subcontract. We observe that the clarification of the work to be performed by either Total Electric or SimplexGrinnell did not change the total scope of the work to be performed under the Subcontract and the SimplexGrinnell Subcontract. To the contrary, as expressly stated, the total cost of the two subcontracts *was to remain the same*. The clarification merely reallocated a portion of the work and the corresponding costs between Total Electric and SimplexGrinnell— namely, the work involving the fire alarm and clock components is shifted from the Subcontract to the SimplexGrinnell Subcontract. Even if this clarification were to create some difference in the price for the purposes of comparing Total Electric's bid to those of the other bidders, it is unclear to us how it would change the difference between the bids from 3.3 percent to 19.2 percent, as Whitt was prepared to testify. Ultimately, the proffered testimony possessed little if any probative value, and thus its exclusion was not so prejudicial as to merit reversal. See Lozano, 421 S.W.3d at 452.

The record presents additional reasons to support a finding that the exclusion of Whitt's testimony regarding the SimplexGrinnell contract was not prejudicial to the District. See id. at 451–52. The record shows that the final SimplexGrinnell Subcontract containing reallocation of work was admitted into evidence at trial. The District elicited testimony regarding the work reallocation and the significance of the clarification from a previous witness, Rodney Miller. See Trident Grp., LLC v. Miss. Valley Roofing, Inc., 279 S.W.3d 192, 199 (Mo. App. E.D. 2009) (internal citations omitted) ("A complaining party is not entitled to assert prejudice if the challenged evidence is cumulative to other related admitted evidence."). The record further

46

shows that the District argued during closing that Total Electric's bid was unreasonably low in light of the clarification of the work reallocation, just as Whitt was prepared to testify. Given these facts, Whitt's testimony would have been merely cumulative to already admitted evidence. See id. Similarly, not only does the record show that the District presented evidence and made arguments that Total Electric's bid was unreasonably low, but the jury awarded Penzel $800,000 in damages, about half of the $1,531,248 Penzel claimed as damages. Given the significant difference between the amount claimed and the amount awarded, we are not persuaded that the District can show that the exclusion of Whitt's testimony materially affected the jury's verdict. To the contrary, the jury's actual damage award very possibly reflected a substantial reduction from Penzel's claimed damages because the jury found Total Electric's bid to be unreasonably low. See Lozano, 421 S.W.3d at 451–52.

Because the District cannot show that the exclusion of Whitt's testimony prejudiced the District, the District has not shown an abuse of discretion, and we will not reverse the trial court's judgment even if the exclusion of evidence was erroneous. See id. Point Three is denied.

## IV.    Points One and Two—Section 408.020 Award Prejudgment Interest

The jury awarded Penzel damages on its breach-of-contract claim. The trial court assessed both PPP interest under Section 34.057 and general prejudgment interest on the jury's damage award. The District first alleges the trial court erred in awarding prejudgment interest to Penzel because the Prime Contract did not provide for prejudgment interest under the circumstances of the case, and in Point Two, challenges the concurrent award of prejudgment interest under Section 408.020 and PPP interest under Section 34.057.

### A.    Standard of Review

"Determination of the right to prejudgment interest is reviewed de novo because it is primarily a question of statutory interpretation and its application to undisputed facts." Child.

47

Int'l, 215 S.W.3d at 202. Similarly, we review questions involving the interpretation of contracts de novo. Patterson v. Rough Rd. Rescue, Inc., 529 S.W.3d 887, 893 (Mo. App. E.D. 2017) (internal citation omitted). Any other questions of statutory interpretation, such as the plain meaning of a statute, we also review de novo without deference to the trial court. Spradling v. SSM Health Care St. Louis, 313 S.W.3d 683, 686 (Mo. banc 2010) (internal citation omitted).

B.    Point One—Prejudgment Interest under the Prime Contract

In its first point on appeal, the District maintains that prejudgment interest could not accrue under the Prime Contract because Penzel's claims were not properly and timely initiated, there was not a proper demand for a set amount due on a set date, the amount sought was not liquidated, and prejudgment interest was barred by several questions of first impression relating to Penzel's right to recover MTCM-calculated damages under the Spearin doctrine. In our discussion of Point Four above, we rejected the District's arguments regarding the initiation of the claim, the lack of a liquidated amount, as well as the questions of first impression. We are left to consider the District's argument that the trial court erred in awarding prejudgment interest due to the lack of a proper demand seeking a set amount due on a set date.

Preliminarily, we observe that the District's arguments—whether the assessment of prejudgment interest was allowable under the terms of the Prime Contract or whether prejudgment interest was barred because the issues raised in Penzel I were issues of first impression—do not appear to relate directly to either of the issues raised by the District in its point on appeal. Therefore, it is not clear to us that this argument is preserved. See Rule 84.04(e) ("The argument shall be limited to those errors included in the 'Points Relied On.'"); Ball, 548 S.W.3d at 382 n.2. We read the District's argument as challenging the award of prejudgment under Section 408.020, rather than under the Prime Contract. Indeed, the parties agree that "[p]rejudgment interest can be based on either statute or contract," and the District

48

notes in its argument contained within Point One that it is unclear whether the trial court's award of prejudgment interest was based on statute or contract.[16] See Juan v. Growe, 547 S.W.3d 585, 597 (Mo. App. E.D. 2018) (internal citation omitted). The primary authority that the District relies upon in this portion of its argument, Nusbaum, 100 S.W.3d 101, provides that a demand definite as to amount and time is required for interest to accrue under Section 408.020, not under a contract. See id. at 109.

Regardless of whether this argument of the District's is preserved, we find it inapposite, as prejudgment interest was properly awarded under the Prime Contract, which expressly provides for interest at the prevailing legal rate as reflected in the trial court's judgment. See Juan, 547 S.W.3d at 597; see also Mo. Soybean Ass'n v. Mo. Clean Water Comm'n, 102 S.W.3d 10, 22 (Mo. banc 2003) (internal citations omitted) ("[T]he trial court's judgment will be affirmed if it is correct on any ground supported by the record, regardless of whether the trial court relied on that ground."). Section 7.2 of the Prime Contract provides "[p]ayments due and unpaid under the Contract shall bear interest from the date payment is due at the legal rate prevailing from time to time at the place where the Project is located." Section 13.6.1 of the General Conditions provides "[p]ayments due and unpaid under the Contract Documents shall bear interest from the date payment is due[.]" Because the parties agree that "the legal rate prevailing from time to time at the place where the project is located" is 9 percent per annum as set out in 408.020, the District argues the award of interest was pursuant to Section 408.020. The District's argument is unavailing because the Prime Contract expressly provides that unpaid amounts due "shall bear interest" and the parties agreed upon an interest rate, even if an

---

[16] We note that the District is correct that the judgment does not specify whether the general prejudgment interest is being awarded pursuant to the contract or to Section 408.020. But the record clearly shows that Penzel argued before the trial court that the interest should be awarded pursuant to the contract and that the trial court adopted Penzel's proposed judgment in all relevant respects.

unspecific one.  See G&G Mech. Constructors, Inc. v. Jeff City Indus., Inc., 549 S.W.3d 492, 496 (Mo. App. W.D. 2018) (internal citation omitted) ("Where an agreement is reached by the parties regarding the interest rate, even if the agreement is that no interest will be paid or established the interest rate to be zero percent, it will be enforced."); RPM Plumbing Mech., Inc. v. Jim Plunkett, Inc., 46 S.W.3d 60, 64 (Mo. App. W.D. 2001) (finding the interest rate for a contract was 9 percent per annum pursuant to Section 408.020 where the contract stated the interest rate was the prevailing legal rate).

We yet again address the District's failure to preserve issues for appeal.  The District does not argue that a demand is required when interest is awarded pursuant to a contract as opposed to Section 408.020.  Nor does the District provide any authority attributing the need for a demand definite as to amount and time to any source **other** than Section 408.020.  To the contrary, all cases of which we are aware requiring evidence of a demand that is definite to amount and time are cases where the prejudgment interest was awarded pursuant to Section 408.020, not pursuant to a contract.  See, e.g., Nusbaum, 100 S.W.3d at 109; Assurance Gen. Contracting, LLC v. Ekramuddin, 604 S.W.3d 761, 772 (Mo. App. E.D. 2020); Juan, 547 S.W.3d at 597; Child. Int'l, 215 S.W.3d at 203–04.

Because prejudgment interest was properly awarded under the Prime Contract, Penzel was not required to prove the existence of a demand definite as to amount and time.  Accordingly, the trial court properly awarded general prejudgment interest.  See Patterson, 529 S.W.3d at 893; Child. Int'l, 215 S.W.3d at 202.  Point One is denied.

C.      Point Two—Concurrent Imposition of General Prejudgment Interest and PPP Interest

In its second point on appeal, the District argues the trial court could not lawfully award prejudgment interest under Section 408.020 because the trial court also awarded PPP interest

50

under Section 34.057. Specifically, the District posits that because Sections 408.020 and 34.057 govern the same subject matter and conflict with one another, the trial court was required to follow the directives of the more specific statute, and could award prejudgment interest only at the rate provided in Section 34.057.[17]

Whether prejudgment interest may be concurrently imposed under Section 408.020 at a rate of 9 percent per annum and under Section 34.057 at a rate of 1.5 percent per month for a combined per annum rate of 27 percent appears to be an issue of first impression. See Briggs, 957 S.W.2d at 321 n.2 ("Neither party has raised any issue on this appeal as to whether the penalty interest provisions in Section 34.057 are intended to supplement, or to supplant, any other statutory provisions allowing recovery of interest. We do not address that issue.").

Here, however, we do not reach the question of whether the statutes conflict and whether Section 34.057 should govern because the trial court properly awarded general prejudgment interest under the Prime Contract and not under Section 408.020. See Juan, 547 S.W.3d at 597 (internal citation omitted); see also Mo. Soybean Ass'n, 102 S.W.3d at 22. The District does not argue that Section 34.057 should supplant contractually mandated interest. For that reason, its argument regarding the conflict between Sections 408.020 and 34.057 has no relevance where, as here, Section 408.020 is not the source of the general prejudgment interest. See Juan, 547 S.W.3d at 597; see also Mo. Soybean Ass'n, 102 S.W.3d at 22. Nothing in the text of Section 34.057 suggests in any way that the award of penalty interest under the statute supplants or

---

[17] Penzel argues that this argument is not preserved because the District did not argue before the trial court whether a specific statute concerning prejudgment interest should govern over a general statute. While we agree that the District did not expressly couch their argument at the trial court in these terms, the District argued that awarding both prejudgment interests was improper. We find that the argument as framed on appeal was implicit in its argument to the trial court. However, the District does briefly argue in the argument portion of Point Two that the "prevailing rate" set out in the Prime Contract should have been determined to be 1.5 percent per month pursuant to Section 34.057 rather than 9 percent per annum pursuant to Section 408.020. The District fails to direct us to when, if ever, it presented this argument to the trial court. Because this argument does not fall within the scope of the point relied on, it is not preserved. See Rule 84.04(e); Ball, 548 S.W.3d at 382 n.2.

somehow voids a contractually agreed upon prejudgment interest. We cannot read into or add such words to the statute. See Peters v. Wady Indus., Inc., 489 S.W.3d 784, 792 (Mo. banc 2016) (internal citation omitted). Nevertheless, we do not consider whether a trial court may concurrently assess general prejudgment interest pursuant to a contract and penalty interest under Section 34.057 because the District has not challenged the award of both interests on this ground. See KDW Staffing, LLC v. Grove Constr., LLC, 584 S.W.3d 833, 838 (Mo. App. W.D. 2019) (internal citation omitted) ("A failure to challenge all bases for a judgment is fatal[.]"); see also Mo. Soybean Ass'n, 102 S.W.3d at 22 (providing we are not concerned with the trial court's actual grounds for an action if it would have been correct on other grounds). Point Two is denied.

## V.     Penzel's Motion for Attorneys' Fees

Penzel has moved for attorneys' fees on appeal in the amount of $129,202.50. "[E]ntitlement to attorneys' fees on appeal stands upon the same ground as the trial court level." Merseal v. Farm Bureau Town & Country Ins. Co. of Mo., 396 S.W.3d 467, 475 (Mo. App. E.D. 2013) (internal citation omitted). Section 34.057.8 permits an award of attorneys' fees, and the trial court awarded attorneys' fees in the present case. "Refusing to compensate an attorney for the time reasonably spent on appellate work defending the judgment below would be inconsistent with the intent of the legislature, which provided for recovery of fees." Stark Liquidation Co. v. Florists' Mut. Ins. Co., 243 S.W.3d 385, 402 (Mo. App. E.D. 2007) (internal quotation omitted). Accordingly, we grant Penzel's motion for reasonable appellate attorneys' fees. See id.; Merseal, 396 S.W.3d at 475.

Regarding the amount of the fees requested, while we have the authority to determine and award an appropriate amount of attorneys' fees, "we exercise this power with caution, believing in most cases that the trial court is better equipped to hear evidence and argument on this issue

52

and determine the reasonableness of the fee requested." <u>Stark Liquidation Co.</u>, 243 S.W.3d at 402. Accordingly, we remand with directions to the trial court to determine the amount of the attorneys' fees and enter judgment accordingly.

Conclusion

We affirm the judgment of the trial court. We grant Penzel's motion for appellate attorneys' fees, and we remand to the trial court for a determination of reasonable appellate attorneys' fees.

_Kurt S. Odenwald_
KURT S. ODENWALD, Judge

Angela T. Quigless, P.J., concurs.
James M. Dowd, J., concurs.